# IN THE SUPREME COURT OF CALIFORNIA

In re JACK WAYNE FRIEND

on Habeas Corpus.

S256914

First Appellate District, Division Three

A155955

Alameda County Superior Court

81254A

_____

June 28, 2021

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Groban, and Jenkins concurred.

_____

In re FRIEND

S256914


Opinion of the Court by Kruger, J.


Proposition 66, the Death Penalty Reform and Savings Act of 2016 (as approved by voters, Gen. Elec. (Nov. 8, 2016) § 1), made wide-ranging changes to the procedures for challenging convictions and sentences in capital cases. Among other things, Proposition 66 introduced new restrictions on the presentation of habeas corpus claims in what the measure refers to as "successive" petitions: Individuals who file successive petitions must show they are actually innocent or ineligible for the death penalty before courts may consider the merits of their claims. (Pen. Code, §§ 1509, 1509.1.) The question before us concerns the scope of these restrictions on successive petitions. Do the restrictions apply to all claims raised in a second or subsequent habeas petition, including claims based on newly available evidence and newly decided case law? Or do the restrictions apply only to those claims that were or could have been raised in an earlier petition?

We answer this question by reference to background principles of habeas corpus law. The traditional rules governing the handling of successive petitions have long distinguished between the presentation of newly available claims and the presentation of claims that could have been raised earlier; the law has traditionally limited only the latter, forbidding consideration of repetitive or pretermitted claims except in a few, narrowly defined circumstances. Proposition 66 modified these rules by further narrowing the circumstances under which

1

courts may consider repetitive or pretermitted claims in capital cases. But properly understood, Proposition 66's successiveness restrictions do not limit the consideration of claims that could not reasonably have been raised earlier, such as those based on newly available evidence or on recent changes in the law — claims that have not previously been thought subject to successiveness limitations. Thus, under the law as amended by Proposition 66, habeas corpus petitioners must make a showing of actual innocence or death ineligibility if they seek a second chance to make an argument they could have made earlier. No such requirement applies to the habeas petitioner who raises a newly available claim at the first opportunity.

## I.

Petitioner Jack Wayne Friend was convicted of the 1984 robbery murder of Oakland bartender Herbert Pierucci and sentenced to death. On automatic appeal, we affirmed the capital convictions and sentence. (*People v. Friend* (2009) 47 Cal.4th 1, 10.) Friend filed a habeas corpus petition in this court, which we denied in 2015. Friend then filed a federal habeas petition in the United States District Court for the Northern District of California. In 2017, the federal court stayed proceedings to allow Friend to exhaust six claims in state court. The following year, Friend filed a second state habeas petition raising the six unexhausted claims in Alameda County Superior Court.[1]

---

[1] As identified in Friend's present habeas petition, the six unexhausted claims concern: 1. Discriminatory use of peremptory challenges by the prosecutor; 2. Ineffective assistance of trial counsel in jury selection and investigation of

In the meantime, before Friend filed his second state court petition, Proposition 66 came into force; the measure took effect in October 2017, after this court considered and decided a number of facial challenges to its constitutionality.  (See *Briggs v. Brown* (2017) 3 Cal.5th 808, 862 (*Briggs*).)  Applying Penal Code section 1509, subdivision (d), a provision newly added by Proposition 66, the Alameda County Superior Court dismissed Friend's recently filed habeas petition as successive.  It further denied Friend's request for a certificate of appealability under newly added Penal Code section 1509.1, subdivision (c).  Friend then filed a notice of appeal and requested a certificate of appealability from the Court of Appeal.  That court denied Friend's request for a certificate and marked the notice of appeal inoperative.  (See Cal. Rules of Court, rule 8.392(b)(7).)

We granted Friend's petition for review, specifying three issues for briefing:  the meaning of the term "successive" in Penal Code sections 1509 and 1509.1, the propriety of applying the provisions' limits on successive petitions when the litigant's first petition was filed before Proposition 66 took effect, and the appealability of a dismissal for successiveness under Penal Code sections 1509 and 1509.1.

---

evidence for trial; 3.  Unconstitutionality of imposing the death penalty due to petitioner's organic brain damage; 4.  Denial of due process in the participation of Justices Chin and Corrigan in prior proceedings in this court; 5.  Introduction of statements taken by police in violation of *Miranda v. Arizona* (1966) 384 U.S. 436; and 6.  Ineffective assistance of appellate counsel in failing to raise the *Miranda* claim on direct appeal.

## II.

## A.

Proposition 66 enacted a number of statutory reforms in an effort to make the system of capital punishment "more efficient, less expensive, and more responsive to the rights of victims." (*Briggs, supra,* 3 Cal.5th at p. 831.) Among these reforms were various changes to the procedures for handling and resolving habeas corpus petitions in capital cases. (*Id.* at pp. 823–825.) The bulk of these changes are found in newly added Penal Code section 1509.[2] The most prominent change is

---

[2] Penal Code section 1509 provides in full:

"(a) This section applies to any petition for writ of habeas corpus filed by a person in custody pursuant to a judgment of death. A writ of habeas corpus pursuant to this section is the exclusive procedure for collateral attack on a judgment of death. A petition filed in any court other than the court which imposed the sentence should be promptly transferred to that court unless good cause is shown for the petition to be heard by another court. A petition filed in or transferred to the court which imposed the sentence shall be assigned to the original trial judge unless that judge is unavailable or there is other good cause to assign the case to a different judge.

"(b) After the entry of a judgment of death in the trial court, that court shall offer counsel to the prisoner as provided in Section 68662 of the Government Code.

"(c) Except as provided in subdivisions (d) and (g), the initial petition must be filed within one year of the order entered under Section 68662 of the Government Code.

"(d) An initial petition which is untimely under subdivision (c) or a successive petition whenever filed shall be dismissed unless the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she

was convicted or is ineligible for the sentence. A stay of execution shall not be granted for the purpose of considering a successive or untimely petition unless the court finds that the petitioner has a substantial claim of actual innocence or ineligibility. 'Ineligible for the sentence of death' means that circumstances exist placing that sentence outside the range of the sentencer's discretion. Claims of ineligibility include a claim that none of the special circumstances in subdivision (a) of Section 190.2 is true, a claim that the defendant was under the age of 18 at the time of the crime, or a claim that the defendant has an intellectual disability, as defined in Section 1376. A claim relating to the sentencing decision under Section 190.3 is not a claim of actual innocence or ineligibility for the purpose of this section.

"(e) A petitioner claiming innocence or ineligibility under subdivision (d) shall disclose all material information relating to guilt or eligibility in the possession of the petitioner or present or former counsel for petitioner. If the petitioner willfully fails to make the disclosure required by this subdivision and authorize disclosure by counsel, the petition may be dismissed.

"(f) Proceedings under this section shall be conducted as expeditiously as possible, consistent with a fair adjudication. The superior court shall resolve the initial petition within one year of filing unless the court finds that a delay is necessary to resolve a substantial claim of actual innocence, but in no instance shall the court take longer than two years to resolve the petition. On decision of an initial petition, the court shall issue a statement of decision explaining the factual and legal basis for its decision.

"(g) If a habeas corpus petition is pending on the effective date of this section, the court may transfer the petition to the court which imposed the sentence. In a case where a judgment of death was imposed prior to the effective date of this section, but no habeas corpus petition has been filed prior to the effective date of this section, a petition that would otherwise be barred by subdivision (c) may be filed within one year of the effective date of this section or within the time allowed under prior law, whichever is earlier."

a new one-year deadline for filing an "initial" habeas petition after the appointment of counsel (Pen. Code, § 1509, subd. (c)); this represents a departure from traditional habeas law in capital as well as noncapital cases, which ordinarily considers the timeliness of habeas petitions without imposing "fixed, determinate deadlines." (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 890; see *In re Robbins* (1998) 18 Cal.4th 770, 780 (*Robbins*) [outlining pre-Proposition 66 timeliness rules for capital habeas].) But Proposition 66 changes habeas procedure in other ways as well. Whereas the approved practice was for all capital habeas petitioners to file directly in this court, section 1509 now calls for most capital petitions to be heard initially in the sentencing court. (Pen. Code, § 1509, subd. (a).) And whereas the law generally requires unsuccessful habeas petitioners to seek review by filing a new habeas petition in a higher court (see *Robinson*, at p. 895), newly added Penal Code section 1509.1 requires capital petitioners to seek review by way of appeal instead. (Pen. Code, § 1509.1, subd. (a).)[3]

---

[3]     Penal Code section 1509.1 provides in full:

"(a) Either party may appeal the decision of a superior court on an initial petition under Section 1509 to the court of appeal. An appeal shall be taken by filing a notice of appeal in the superior court within 30 days of the court's decision granting or denying the habeas petition. A successive petition shall not be used as a means of reviewing a denial of habeas relief.

"(b) The issues considered on an appeal under subdivision (a) shall be limited to the claims raised in the superior court, except that the court of appeal may also consider a claim of ineffective assistance of trial counsel if the failure of habeas counsel to present that claim to the superior court constituted ineffective assistance. The court of appeal may, if additional

The provisions at issue in this case set out instructions for handling successive petitions.  Penal Code section 1509, subdivision (d) (section 1509(d)), provides, as relevant here: "An initial petition which is untimely under subdivision (c) or a successive petition whenever filed shall be dismissed unless the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she was convicted or is ineligible for the sentence."  Penal Code section 1509.1 then imposes a related procedural hurdle for litigants seeking to appeal the denial of a successive petition.  It provides that such litigants "may appeal the decision of the superior court denying

findings of fact are required, make a limited remand to the superior court to consider the claim.

"(c) The people may appeal the decision of the superior court granting relief on a successive petition.  The petitioner may appeal the decision of the superior court denying relief on a successive petition only if the superior court or the court of appeal grants a certificate of appealability.  A certificate of appealability may issue under this subdivision only if the petitioner has shown both a substantial claim for relief, which shall be indicated in the certificate, and a substantial claim that the requirements of subdivision (d) of Section 1509 have been met.  An appeal under this subdivision shall be taken by filing a notice of appeal in the superior court within 30 days of the court's decision.  The superior court shall grant or deny a certificate of appealability concurrently with a decision denying relief on the petition.  The court of appeal shall grant or deny a request for a certificate of appealability within 10 days of an application for a certificate.  The jurisdiction of the court of appeal is limited to the claims identified in the certificate and any additional claims added by the court of appeal within 60 days of the notice of appeal.  An appeal under this subdivision shall have priority over all other matters and be decided as expeditiously as possible."

7

relief on a successive petition only if the superior court or the court of appeal grants a certificate of appealability." (Pen. Code, § 1509.1, subd. (c) (section 1509.1(c)).) Section 1509.1(c) further specifies that "[a] certificate of appealability may issue under this subdivision only if the petitioner has shown both a substantial claim for relief, which shall be indicated in the certificate, and a substantial claim that the requirements of subdivision (d) of Section 1509 have been met." The overall effect of these restrictions is to forbid courts from considering successive petitions, or appeals from the denial of such petitions, that are unaccompanied by a showing of innocence or ineligibility for the death penalty.

To put this set of reforms in context, we briefly describe the law as it existed before Proposition 66 (and as it continues to exist in noncapital cases). Restrictions on the consideration of successive habeas petitions are not new. Several decades ago, California courts identified presentation of claims in a " 'piecemeal [manner] by successive proceedings' " as an abuse of the writ process. (*In re Horowitz* (1949) 33 Cal.2d 534, 547, quoting *In re Drew* (1922) 188 Cal. 717, 722.) The solution was the development of the so-called successiveness bar, a set of limits that applied in all habeas cases before Proposition 66 and that continues to apply to noncapital cases today. Like other procedural bars developed in the case law, the successiveness bar was "designed to ensure legitimate claims are pressed early in the legal process." (*In re Reno* (2012) 55 Cal.4th 428, 452 (*Reno*).) The bar therefore limits consideration of claims that were unjustifiably omitted from earlier petitions. But importantly, it does so "while leaving open a 'safety valve' for those rare or unusual claims that could not reasonably have been raised at an earlier time." (*Ibid*.)

To determine whether the successiveness bar applies under traditional habeas principles, a court conducts a two-step analysis. (*In re Clark* (1993) 5 Cal.4th 750 (*Clark*).) First, the court asks whether the habeas petitioner who files a second or subsequent petition has adequately justified his or her failure to present his or her claims in an earlier petition. (*Id.* at pp. 774–775.) Adequate justifications include the inability to bring the claim earlier, as where the claim depends on newly available evidence or on a change in the law that has been made retroactively applicable to final judgments. (*Id.* at p. 775.) In the rare instance in which the petitioner is able to adequately justify not having raised the claim earlier, the successiveness bar does not apply. (*Ibid.*)

If there is no adequate justification for the petitioner's failure to raise the claim earlier, the court proceeds to the second step of the analysis. At that step, the court must generally apply the successiveness bar to preclude consideration of the claim. But there is narrow exception for claims alleging "facts demonstrating that a fundamental miscarriage of justice has occurred." (*Clark, supra*, 5 Cal.4th at p. 775.) In *Clark*, we identified four situations in which the fundamental miscarriage exception is satisfied: (1) a highly prejudicial error of constitutional magnitude; (2) the petitioner's actual innocence; (3) presentation in a capital trial of a grossly misleading and highly prejudicial profile of the petitioner; or (4) conviction or sentencing under an invalid statute. (*Id.* at pp. 797–798; accord, *Reno*, 55 Cal.4th at pp. 455–456, 472; *Robbins, supra*, 18 Cal.4th at pp. 788, fn. 9, 811.) To determine whether a habeas petitioner should be given a second chance to make a claim that could have been made earlier, a court considers whether the petitioner has made a showing that would bring the claim within this four-part

fundamental miscarriage exception. If so, the court proceeds to consider the merits; if not, then not.

**B.**

The successiveness provisions of Proposition 66 changed existing law by forbidding courts from considering successive petitions that are unaccompanied by a showing of actual innocence or ineligibility for the death penalty. This is a more stringent standard than any standard applicable under traditional habeas corpus law. The issue before us concerns the scope of the change. A broad reading of Proposition 66 would apply its stringent successiveness standard to *all* second or subsequent capital habeas petitions, thereby eliminating the traditional carveout for claims based on newly available evidence and other claims that could not have been raised earlier. A narrower, alternative reading of Proposition 66 would apply this successiveness standard only to those petitions raising repetitive or pretermitted claims — that is, those claims that are generally subject to the traditional successiveness bar. Under this narrower reading, Proposition 66 preserves the traditional two-step inquiry described in case law, but at the second step it replaces the four-part fundamental miscarriage of justice exception with just two grounds — actual innocence or death ineligibility — that will justify giving a habeas petitioner a second chance to raise a claim that was unjustifiably omitted from a prior petition.

On this question, the parties are in agreement; each maintains that Proposition 66's stringent successiveness standard does not apply to claims that could not have been raised in earlier petitions. Friend contends that this narrower reading of Proposition 66 is not only consistent with the usual

use of the term "successive" in habeas corpus law, but also avoids serious questions about the constitutionality of a law that would bar potentially meritorious habeas claims that could not have been raised in prior petitions. The Attorney General concurs. He observes that though the term "successive" might naturally be read in a colloquial sense to encompass all petitions subsequent to the first, Friend's narrower reading is the better one because it avoids serious constitutional doubts.

By contrast, two amici curiae — the Criminal Justice Legal Foundation (CJLF) and a group of legal scholars (the Constitutional Law Amici) — argue that the term "successive" in Proposition 66 should be broadly construed to refer to any petition after the petitioner's first.[4] These amici divide, though, on the constitutionality of sections 1509(d) and 1509.1(c) so construed. The Constitutional Law Amici argue that insofar as Proposition 66 eliminates the traditional safety valve for claims that could not have reasonably been raised earlier, the measure violates habeas petitioners' federal and state due process rights, as well as the California Constitution's prohibition on suspension of the writ of habeas corpus (Cal. Const., art I, § 11). CJLF, by contrast, urges that Proposition 66's limitations on successive petitions, broadly construed, are "clearly constitutional."

When we interpret statutes, we usually begin by considering the ordinary and usual meaning of the law's terms, viewing them in their context within the statute. (*People v.*

---

[4]     A third amicus curiae brief, filed on behalf of the Offices of the Federal Public Defenders for the Central and Eastern Districts of California, takes the same interpretive position as the parties.

*Colbert* (2019) 6 Cal.5th 596, 603.) Here, as both the Attorney General and amici curiae note, dictionaries define the term "successive" to mean "[f]ollowing in uninterrupted order; consecutive." (American Heritage Dict. (4th ed. 2000) p. 1728.) If this dictionary definition controls, then Proposition 66's restrictions on successive petitions would apply without exception to any habeas petition that follows the initial habeas petition.

When, however, a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage. "It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." (*City of Long Beach v. Payne* (1935) 3 Cal.2d 184, 191; accord, *In re Derrick B.* (2006) 39 Cal.4th 535, 540; *People v. Lawrence* (2000) 24 Cal.4th 219, 231 [principle applies to statutes adopted through initiative]; see Pen. Code, § 7, subd. (16) ["Words and phrases . . . as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning."].)

As explained above, successiveness restrictions have a long history in habeas corpus law, and the concept of successiveness has acquired a particular meaning in that context. We consider that legal background in discerning the meaning of the restrictions on successive petitions in Proposition 66. (Cf. *Panetti v. Quarterman* (2007) 551 U.S. 930, 943 [the term "second or successive" as used in a federal habeas

statute "is not self-defining," but "takes its full meaning from our case law" applying general habeas corpus principles].)

California habeas law traditionally has not imposed blanket restrictions on the consideration of every petition filed after an initial petition, as the dictionary definition of the term "successive" might suggest. The traditional successiveness bar instead prevents a habeas corpus petitioner from abusing the writ process by presenting claims in a repetitive or piecemeal manner. (*Briggs*, *supra*, 3 Cal.5th at p. 836, fn. 14.) This means that a claim will not be barred as successive, even though it may be presented in a second or subsequent habeas petition, if the petitioner offers adequate justification for the failure to present a particular claim in an earlier petition. (*Clark*, *supra*, 5 Cal.4th at p. 774.) Though it is unusual for a petitioner to make the required showing, we have said consideration of such a claim is ordinarily warranted "where the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made" and the claim is "asserted as promptly as reasonably possible." (*Id.* at p. 775.) In addition, claims based on a change in the law that is retroactively applicable to final judgments will be considered if promptly asserted and if application of the former rule is shown to have been prejudicial. (*Ibid.*) And finally, the ineffective assistance of prior counsel may justify raising a claim in a subsequent petition. (*Id.* at p. 780.)[5]

---

[5] To justify a second or subsequent filing based on prior ineffective assistance of counsel, the petitioner must "allege with specificity the facts underlying the claim that the inadequate presentation of an issue or omission of any issue

We have mainly used the term "successive petition" to refer specifically to a petition subject to the successiveness bar — that is, one raising claims that could have been presented in a previous petition. (*Briggs*, *supra*, 3 Cal.5th at p. 836, fn. 14.) In *Clark*, for example, we used the term "successive petitions" as a shorthand for subsequent petitions "seeking relief on the basis of the same set of facts" or "raising claims that could have been raised in a prior petition." (*Clark*, *supra*, 5 Cal.4th at p. 770.) We explained that "[e]ntertaining the merits of successive petitions is inconsistent with our recognition that delayed and repetitious presentation of claims is an abuse of the writ" (*id.* at p. 769), and that the consideration of such petitions "unreasonably delays execution of judgment" and "waste[s] scarce judicial resources" (*id.* at p. 770). We went on to explain that the same is not true of second or subsequent petitions raising claims that could not reasonably have been raised before. (*Id.* at pp. 774–775.)[6] Echoing this point in *Reno*, we observed that " '[e]ntertaining the merits of successive petitions is inconsistent with our recognition that delayed and repetitious presentation of claims is an abuse of the writ.' " (*Reno*, *supra*,

---

reflects incompetence of counsel . . . . Moreover, mere omission of a claim 'developed' by new counsel does not raise a presumption that prior habeas corpus counsel was incompetent, or warrant consideration of the merits of a successive petition." (*Clark*, *supra*, 5 Cal.4th at p. 780.)

[6] In connection with *Clark*'s substantive exception for fundamental miscarriages of justice, we also explained that "[t]hese claims will be considered on their merits even though presented for the first time in a successive petition or one in which the delay has not been justified" (*Clark*, *supra*, 5 Cal.4th at p. 798), apparently using "successive" to refer to claims whose omission from a prior petition has not been justified.

55 Cal.4th at p. 455.) And we used the term "successive" in the same way in *Robbins*, where we drew a distinction between " 'subsequent' " petitions and " 'successive' " ones: "[C]laims presented in a 'subsequent' petition that *should have been* presented in an earlier filed petition will be barred as 'successive' unless the petitioner 'adequately explains' his or her failure to present *all* claims in the earlier filed petition." (*Robbins*, *supra*, 18 Cal.4th at p. 788, fn. 9.)

True, our cases have not always been consistent in their use of terminology. As the Attorney General and amici curiae point out, we have also sometimes used the term "successive" to refer to any second or subsequent petition, while referring to those petitions subject to the successiveness bar as *both* successive *and* unjustified. (E.g., *Clark*, *supra*, 5 Cal.4th at p. 774 ["[b]efore considering the merits of a second or successive petition, a California court will first ask whether the failure to present the claims underlying the new petition in a prior petition has been adequately explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims"]; *Reno*, *supra*, 55 Cal.4th at p. 517 [referring to the court's "proposed limit of 50 pages for successive petitions"].)

Despite these variations in our terminology, however, the substantive principle has remained constant: When we have barred a claim as "successive," it is because we have concluded that the claim was omitted from an earlier petition without justification, and its presentation therefore constitutes abuse of the writ process. We have not, by contrast, considered the filing of a claim that could not have reasonably been raised in an earlier petition to be an abuse of the writ subject to the bar on successive petitions.

Amici curiae acknowledge the scope of the successiveness bar in California habeas jurisprudence, but contend that statutory context makes clear Proposition 66 voters intended a distinctly different approach. Amici emphasize that Penal Code sections 1509 and 1509.1 refer only to "initial" and "successive" petitions. Interpreting "successive" narrowly to preserve the traditional carveout for nonabusive claims, they say, would require us to recognize a third category consisting of second or subsequent habeas petitions that are treated as nonsuccessive. Amici observe that while Proposition 66 contains certain provisions regarding the timeliness of "initial" petitions and procedures for appealing both "initial" and "successive" petitions, it contains no similar provisions pertaining to cases in this third category. From this, amici deduce that no such third category was intended.

It is possible, as amici curiae say, that Proposition 66 refers only to "initial" and "successive" habeas corpus petitions because voters believed that all second or subsequent petitions should be treated as "successive" — and therefore barred unless the petitioner is able to show actual innocence or ineligibility for death, regardless of whether the petitioner could have raised the claim earlier. But it is equally possible that the voters simply thought it unnecessary to set out special provisions to govern the relatively rare situation in which a second or subsequent habeas corpus petition raises claims that could not reasonably have been presented in an earlier petition.

Amici curiae's argument would have more force if we were convinced that voters intended Proposition 66 to supply comprehensive instructions for the handling of capital habeas petitions, but we are not so convinced. The question of how timeliness of a subsequent but nonsuccessive petition may be

determined is beyond the scope of this case, but suffice it to say that Proposition 66 did not provide a new timeliness rule for *any* kind of petition other than initial petitions (and nothing in the measure appears to preclude continued application of the traditional timeliness standards that have been developed and applied in this court's habeas cases (see *Robbins*, *supra*, 18 Cal.4th at p. 780)). And although Proposition 66 may not speak specifically to procedures for appealing rulings on subsequent but nonsuccessive petitions, its appellate provisions appear capable of being applied to such petitions, as explained in greater detail below. (See pt. IV., *post*.) Simply put, the fact that Proposition 66 does not contain explicit instructions for the handling of subsequent nonsuccessive petitions does not mean that no such category of petitions exists.

Amici curiae also point to the use of the term "successive" in a different subdivision of Penal Code section 1509.1 as evidence that the term was meant to refer to any and all petitions following the first. Subdivision (a) of section 1509.1, which addresses appeals from rulings on initial petitions, specifies that "[a] successive petition shall not be used as a means of reviewing a denial of habeas relief." Amici contend that here, "successive" is used to mean any petition following the initial petition. Amici contend the term must mean the same thing everywhere else it appears in the statute, including sections 1509(d) and 1509.1(c).

We are unpersuaded. As we explained in *Briggs*, Penal Code section 1509.1, subdivision (a), is designed to substitute an appellate procedure for the usual means for obtaining review of habeas corpus denials — namely, "filing a new habeas corpus petition in a higher court" (*Briggs*, *supra*, 3 Cal.5th at p. 836). For this limited purpose the statute uses the term "successive

petition" to refer to what our cases would typically call a " 'new petition' . . . seeking review of a lower court's ruling." (*Id.* at p. 836, fn. 14.) This distinctive usage of the term "successive petition" does not compel any particular conclusion about the meaning of the term as it appears in the context of substantive restrictions on lower courts' ability to issue rulings in the first instance.

Finally, CJLF argues that voters could not have intended to preserve the overall structure of the traditional successiveness bar because sections 1509(d) and 1509.1(c) refer to successive "petitions," while our precedents have applied the successiveness bar on a claim-by-claim basis. That is to say, under our case law, courts may consider the merits of one or more claims in a subsequent petition even if other claims in the same petition are procedurally barred as successive. (*Reno*, *supra*, 55 Cal.4th at p. 452; *Robbins*, *supra*, 18 Cal.4th at p. 788, fn. 9; *Clark*, *supra*, 5 Cal.4th at pp. 768, 780–782.) But context makes clear that Proposition 66's restrictions operate in much the same way. When a petitioner files a "successive" petition, section 1509(d) calls for a determination whether "the petitioner has a substantial *claim* of actual innocence or ineligibility." (§ 1509(d), italics added.) And when the petitioner seeks to appeal the denial of relief, section 1509.1(c) provides for a certificate of appealability only where the petition states "a substantial *claim* for relief, which shall be indicated in the certificate," and limits appellate jurisdiction to "the *claims* identified in the certificate and any additional *claims* added by the court of appeal within 60 days of the notice of appeal." (§ 1509.1(c), italics added.) The statutes thus mark no fundamental departure from traditional habeas law in this regard.

In short, the text of the statute contains no definitive indication that by introducing a new stringent standard for the presentation of claims in "successive" petitions, voters intended to eliminate the traditional carveout for claims that could not feasibly have been presented earlier. Given the legal backdrop against which voters enacted Proposition 66, it is entirely plausible that voters intended Proposition 66's stringent standard for considering successive petitions to capture only petitions raising claims that would have traditionally been considered abusive and therefore subject to the successiveness bar — that is, claims that were omitted from prior habeas petitions without justification.

Friend, joined by the Attorney General, argues that this narrower understanding of Proposition 66's successiveness provisions is not only plausible, but compelled by the canon of constitutional avoidance. This rule of interpretation instructs that "[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Miller v. Municipal Court* (1943) 22 Cal.2d 818, 828; accord, *People v. Lopez* (2020) 9 Cal.5th 254, 276 [applying canon to interpretation of initiative measure]; *People v. Engram* (2010)

50 Cal.4th 1131, 1161; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509.)

Friend contends that reading "successive" petition in section 1509(d) as referring broadly to any second or subsequent petition would raise significant constitutional concerns insofar as it would bar relief for serious constitutional violations even "where the petitioner did not discover the basis of a constitutional violation despite acting diligently." This broad reading would, for example, foreclose a claim based on revelations that the prosecutor failed to disclose evidence that would have strongly supported the defendant's case in mitigation at the penalty phase. Under traditional standards, we would order a new penalty phase if the withholding of the evidence could be said to undermine confidence in the death verdict.[7] But under the broad reading of section 1509(d), the claim would be barred because it neither establishes the petitioner's actual innocence nor ineligibility for the death penalty.

The broad reading of section 1509(d) would likewise foreclose a claim based on newly available evidence of trial misconduct by jurors, the prosecutor, defense counsel, or the trial judge. Such misconduct might be serious enough to call into question the validity of the judgment, yet fail to meet

---

[7]    See, e.g., *In re Bacigalupo* (2012) 55 Cal.4th 312, 315–317 (ordering relief from judgment of death based on claim in second state habeas corpus petition that prosecution suppressed evidence that petitioner had committed his crime under duress, which would have supported petitioner's penalty phase case in mitigation).

section 1509(d)'s innocence or ineligibility standard.[8] Similarly, posttrial scientific developments might yield evidence that critically undermines confidence in the jury verdict without establishing innocence or death ineligibility.[9]

Friend further maintains the broad reading of "successive" would encompass potentially meritorious claims that could not have been brought in the initial petition for procedural reasons — such as a petition challenging an execution method, which would have been deemed premature at the time of the first petition[10] — or because they arise from a change in applicable law.[11] Finally, Friend points to the possibility of

---

[8] See, e.g., *Tharpe v. Sellers* (2018) ___ U.S. ___, ___ [138 S.Ct. 545, 548] (juror's racist view of defendant discovered more than seven years after trial); *Foster v. Chatman* (2016) 578 U.S. ___, ___–___ [136 S.Ct. 1737, 1743–1744] (evidence of prosecutor's discriminatory use of peremptory challenges discovered through public records request); *Bracy v. Gramley* (1997) 520 U.S. 899, 906–907 (trial judge indicted for bribery about 10 years after the petitioner's trial); *In re Gay* (2020) 8 Cal.5th 1059, 1084 (relief granted on second petition in part because attorney-client relationship was "poisoned at its root by fraud").

[9] See, e.g., *In re Richards* (2016) 63 Cal.4th 291, 305 (10 years after trial, prosecution expert recanted his trial testimony identifying the mark on the victim's arm as resulting from a bite by defendant).

[10] See *People v. DePriest* (2007) 42 Cal.4th 1, 61 (on appeal, claims of "[a]lleged imperfections and illegalities in the execution process that may or may not exist when [defendant's] death sentence is implemented are premature").

[11] See, e.g., *In re Richards, supra*, 63 Cal.4th at page 294, footnote 2 ("Because of the change in the applicable law concerning the definition of false evidence, the petition is not

meritorious claims of error, not going to innocence or ineligibility, that counsel for the petitioner incompetently failed to include in the first petition. As explained earlier, *Clark*'s successiveness rule treats counsel's ineffective assistance, if established, as good cause for raising the issue in a subsequent petition. (See *ante*, at p. 13.) The broad reading of section 1509(d), by contrast, would bar the petitioner from ever raising the issue.

In Friend's view, interpreting section 1509(d) to preclude all these categories of claims would raise serious questions as to whether Proposition 66 deprives condemned prisoners of due process and equal protection of the laws and constitutes an impermissible suspension of the writ of habeas corpus under the state and federal Constitutions. The Attorney General agrees that the broad reading of section 1509(d) would raise serious constitutional questions, and for that reason is to be avoided. Although the Constitutional Law Amici agree with CJLF that section 1509(d) should be interpreted broadly, they contend that the statute, so interpreted, is in fact unconstitutional because it screens out meritorious claims that could not have been raised in the earlier petition. Amicus curiae CJLF, on the other hand, takes the view that the broad reading of section 1509(d) raises no serious constitutional doubts.

We need not definitively resolve the constitutional debate here. For present purposes it is enough to observe that the constitutional questions Friend raises are both novel and serious. The California Constitution has protected the right to

---

subject to the procedural bar of successiveness."); see *Reno, supra*, 55 Cal.4th at page 466 ("A change in the law will also excuse a successive or repetitive habeas corpus petition.").

seek relief by habeas corpus since our state's founding. (Cal. Const. of 1849, art. I, § 5; see *Clark, supra*, 5 Cal.4th at p. 764.) Habeas, we have explained, "often represents a prisoner's last chance to obtain judicial review" of a criminal conviction. (*Reno, supra*, 55 Cal.4th at p. 450.) The law preserves this avenue to relief in service of principles of substantial justice: " 'Despite the substantive and procedural protections afforded those accused of committing crimes, the basic charters governing our society wisely hold open a final possibility for prisoners to prove their convictions were obtained unjustly.' " (*Ibid.*) And although we have long limited piecemeal and repetitive claims as an abuse of the writ, the same principles of substantial justice have led us to leave "open a 'safety valve' for those rare or unusual claims that could not reasonably have been raised at an earlier time." (*Id.* at p. 452.) Our rules have thus sought to "permit the resolution of legitimate claims in the fairest and most efficacious manner possible," without barring legitimate claims raised belatedly through no fault of the petitioner. (*Ibid.*)

If Proposition 66 were construed to preclude even claims of constitutional error that could not have been raised earlier with reasonable diligence, it would mark the first time that the law has closed that long-standing safety valve for newly available claims. The statute would instead apply the same exacting innocence or ineligibility standard to all claims raised in a second or successive petition, whether justifiably or not. It is a significant question whether such a drastic restriction on the effectiveness of the habeas corpus remedy would comport with the principles of substantial justice that lie at the core of our state Constitution's habeas protections.

The due process implications of this approach are likewise substantial. Under the broad reading of section 1509(d), a

capital prisoner who discovers that the prosecution has suppressed material mitigation evidence, or that one of the convicting jurors repeatedly expressed racial or other bias against him or her, would have no recourse if the persons involved managed to conceal the information long enough. To foreclose such claims by capital prisoners raises substantial questions of procedural fairness.

When we consider procedural due process claims under the California Constitution, we weigh four factors: " '(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official.' " (*People v. Allen* (2008) 44 Cal.4th 843, 862–863.) Considering the weighty private interest at stake in a capital habeas corpus proceeding, the risk of error created when potentially meritorious claims are barred even if presented as promptly as reasonably possible upon discovery, and the dignitary significance of ensuring the validity of death judgments before execution, it is at least questionable whether governmental interests in finality of judgments and conservation of judicial resources can justify a rule barring all but a very narrow class

of claims presented in second or subsequent petitions regardless of whether barred claims could have been presented earlier.[12]

Other state courts have concluded that similar constitutional principles forbid categorical restrictions on the presentation of habeas claims that could not reasonably have been raised earlier. (*People v. Germany* (Colo. 1983) 674 P.2d 345, 353 [statute barring all collateral challenges commenced after a period of limitation violates state and federal due process in that it "makes no attempt to distinguish between those constitutional challenges which could and should have been asserted in a timely manner and those which, due to special circumstances or causes, could not have been raised within the applicable period of limitation"]; *Lott v. State* (2006) 334 Mont. 270, 278–279 [precluding invalid-conviction claim that is based on an intervening statutory interpretation would violate the state Constitution's suspension clause].) We need not decide here whether we would follow these cases in applying the California Constitution; in either event, the decisions underscore the point that the constitutional questions at stake are substantial.

Amicus curiae CJLF argues that the United States Supreme Court's decision in *Felker v. Turpin* (1996) 518 U.S. 651 (*Felker*) disposes of any questions that might arise about the scope of Proposition 66's successiveness provisions. The high court in *Felker* considered the constitutionality of a provision of

---

[12]  While California's constitutional due process clause has generally been understood as requiring much the same process as the federal Constitution, we retain authority to construe the state charter independently. (*People v. Allen, supra*, 44 Cal.4th at p. 863, fn. 14.)

the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA; Pub.L. No. 104-132 (Apr. 24, 1996) 110 Stat. 1214) that generally requires dismissal of "second or successive" habeas applications raising claims based on newly discovered evidence except where "(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and [¶] (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." (28 U.S.C. § 2244(b)(2)(B).)  The court rejected challengers' argument that applying this standard to newly available claims constituted an impermissible suspension of the writ of habeas corpus.  (U.S. Const., art. I, § 9.)  The court reasoned that the new restrictions constitute "a restraint on what is called in habeas corpus practice 'abuse of the writ,'" a doctrine subject to both judicial and legislative evolution, and that "[t]he added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process." (*Felker*, at p. 664.)

We are unpersuaded that *Felker* disposes of the constitutional questions surrounding section 1509(d).  For one thing, section 1509(d) differs in certain respects from the federal statute on review in *Felker*, and the high court in *Felker* had no occasion to opine on the full range of questions section 1509(d) raises.[13]  But more fundamentally, *Felker* addressed only the

---

[13]    For instance, the broad reading of section 1509(d) would ordinarily mandate dismissal of any subsequent petition raising claims based on intervening changes in the law.  *Felker* had no

suspension clause of the United States Constitution. It did not — indeed, could not — provide definitive guidance on questions arising under the habeas corpus or due process provisions of the California Constitution.

In California law, procedural bars to habeas corpus claims serve an important interest in finality of judgments. But these procedural bars have always been subject to exceptions "designed

---

occasion to consider the implications of such a limitation, since AEDPA makes an explicit exception for claims based on new rules of constitutional law made retroactive on collateral review. (28 U.S.C. § 2244(b)(2)(A).)

*Felker* also concerned claims that could, in fact, have been raised earlier. (See *Felker*, *supra*, 518 U.S. at pp. 657–658; see also *Felker v. Turpin* (11th Cir. 1996) 83 F.3d 1303, 1306 ["Felker does not contend that the factual predicate for this claim could not have been discovered previously through the exercise of due diligence."].) The high court in *Felker* had no reason to address the constitutional implications of preventing a habeas petitioner from raising a substantial constitutional claim at the first available opportunity, as the broad reading of section 1509(d) would do. Subsequent federal cases have addressed various questions concerning the application of AEDPA's second-or-successive rules in circumstances where the petitioner could not reasonably have raised a particular claim earlier. (See, e.g., *Panetti v. Quarterman, supra*, 551 U.S. at pp. 945–946 [holding that AEDPA's rules do not apply to claims of incompetence to be executed, which are typically not ripe until well after the initial habeas petition is filed, noting that applying the second-or-successive standards to such claims would mean "petitioners 'run the risk' . . . of 'forever losing their opportunity for any federal review' "]; *Scott v. U.S.* (11th Cir. 2018) 890 F.3d 1239, 1247–1258 [criticizing circuit precedent holding that claims under *Brady v. Maryland* (1963) 373 U.S. 83 are subject to AEDPA's gatekeeping provisions].) In the end, however, it bears repeating that these cases do not bind us in our interpretation of state law.

to ensure fairness and orderly access to the courts." (*Reno*, *supra*, 55 Cal.4th at p. 452.) A successiveness bar lacking an exception for claims that could not with reasonable diligence have been presented in an earlier petition threatens the guarantee of fair access to courts that has traditionally been central to habeas corpus procedure in this state, and in so doing raises significant questions under the California Constitution. As between the two possible readings of section 1509(d), we presume voters did not intend the interpretation that raises substantial constitutional doubts.

As amici curiae CJLF and the Constitutional Law Amici both argue, it is clear that voters did intend to expedite habeas corpus proceedings in capital cases. (*Briggs*, *supra*, 3 Cal.5th at pp. 823–825.) But while it may be true that a broad reading of section 1509(d) would serve this purpose by barring more claims, that is not sufficient reason to adopt the reading. The narrower, alternative reading also serves voters' purposes. Even if construed as incorporating the meaning of "successive" developed in our case law, section 1509(d) will limit subsequent habeas corpus petitions through its replacement of *Clark*'s substantive exception for fundamental miscarriages of justice with a narrower exception limited to claims of innocence or ineligibility.[14] Section 1509.1(c)'s certificate requirement for successive claims will also operate as an additional procedural check on potentially abusive petitions, even if its scope is not as broad as possible. And of course other provisions of Penal Code sections 1509 and 1509.1 also tend to speed up the process of capital habeas corpus review. (See Pen. Code, § 1509, subds. (a)

---

[14] No issue regarding the constitutionality of this change is raised here, and we express no opinion on the matter.

[section provides exclusive procedure for collateral attack; petitions generally to be first adjudicated in sentencing court], (c) [time limit for filing initial petition] & (f) [calling for expedition in deciding and setting two-year goal]; *id.*, § 1509.1, subds. (a) [providing for review by appeal filed within 30 days of decision] & (b) [limiting issues to be addressed on appeal].)

In any event, "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice — and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." (*Rodriguez v. United States* (1987) 480 U.S. 522, 525– 526; accord, e.g., *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1167.) We see no evidence that Proposition 66 was intended to speed up the process of review to the maximum extent possible, no matter the costs to the principles of substantial justice that lie at the core of the Constitution's habeas corpus and due process guarantees. Rather, stating its purposes in uncodified findings and declarations, Proposition 66 was specifically focused on curbing "frivolous and unnecessary claims" that have "wasted taxpayer dollars and delayed justice." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 66, § 2, subd. 7, p. 213 (Voter Information Guide).) Making a claim of constitutional violation that could not reasonably have been made in an earlier petition is not by its nature a frivolous, unnecessary, or wasteful act. We cannot assume the voters were so single-handedly determined to expedite capital habeas corpus proceedings that they would pass a statute systematically

precluding many such claims and thereby raising serious doubts about the measure's constitutionality.[15]

Amici curiae turn to the ballot materials to support their view. But Proposition 66's effects on habeas corpus litigation did not figure heavily in the ballot materials, and nothing in the ballot arguments for and against the measure sheds light on the question here.

The analysis provided by the Legislative Analyst did touch on the topic of limits on successive petitions (though without using that particular term). Discussing restrictions on habeas corpus in light of Proposition 66's newly introduced time limits, the analysis stated: "In order to help meet the above time frames, the measure places other limits on legal challenges to death sentences. For example, the measure does not allow additional habeas corpus petitions to be filed after the first petition is filed, except in those cases where the court finds that the defendant is likely either innocent or not eligible for the death sentence." (Voter Information Guide, *supra*, analysis of Prop. 66 by Legis. Analyst, p. 106.) And in its discussion of fiscal

---

[15] CJLF also argues from the initiative's purpose but focuses on how *federal* court proceedings may be affected by the interpretive question here. The gist of the argument is that a broad reading of section 1509(d)'s bar on successive petitions, by providing federal district courts with grounds for considering state prisoners' petitions defaulted without issuing stays for exhaustion in state court, will tend to expedite postconviction proceedings overall. We express no opinion as to whether section 1509(d), however construed, will or would have this effect. As an interpretive matter, the argument is unavailing because neither the text of section 1509(d) nor anything in the materials presented to the voters indicate Proposition 66 was intended to affect federal court proceedings in this manner.

effects, the analysis observed that "the limits on the number of habeas corpus petitions that can be filed" could reduce the time and resources spent on postconviction proceedings in capital cases. (*Id.* at p. 107.) Neither of these passages, however, brought to voters' attention the specific problem of claims that could not reasonably have been brought in a prior petition. Though the analysis suggests the proposed statutes would place limits on the number of habeas corpus petitions that a condemned person could file, it does not establish the voters intended the measure as operating so strictly as to preclude a condemned prisoner from seeking relief on grounds of a prejudicial constitutional error that, even with reasonable diligence, could not have been discovered and presented earlier. Again, given the significant constitutional doubts that would be raised by such a reading, and in the absence of any substantial evidence to the contrary, we presume this was not the voters' intent.

We instead conclude that the voters' intent in using the term "successive" in section 1509(d) was to build on, rather than fundamentally reconfigure, the concept of "successiveness" as it has developed in the case law. Rather than presume the voters intended a sea change in habeas law that would, for the first time, eliminate the established safety valve for claims that could not have reasonably been raised earlier, we instead conclude they determined to tighten the standards courts have developed to deter abuse of the writ of habeas corpus by making it harder for capital petitioners to earn a second chance to raise claims they could, and should, have raised earlier.

## III.

We turn next to the question of whether Proposition 66's limits on successive petitions are applicable where, as here, the petitioner's previous habeas corpus petition was filed before Proposition 66 took effect. We conclude they are.

As a rule, courts presume that newly enacted legislation is intended to operate prospectively and not retroactively. (See, e.g., *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209.) Friend contends that in cases where the first petition was filed before Proposition 66, applying section 1509(d) to a subsequent petition would constitute retroactive application because it would attach new consequences to the preenactment act of filing the first petition. (See *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 270 (*Landgraf*) [a statute operates retroactively when it "attaches new legal consequences to events completed before its enactment"].) Friend further argues that section 1509(d) does not manifest an intent for retroactive application sufficient to overcome the presumption against retroactive statutory changes. The Attorney General disagrees. He argues that there is no question of retroactive application when section 1509(d) is applied to petitions filed after Proposition 66's effective date. But in any event, the text of Proposition 66 manifests the voters' intent to limit all successive capital petitions, regardless of when the first petition was filed.

The parties have briefed this issue as arising principally if section 1509(d) is understood to categorize all subsequent petitions as successive. Under that interpretation, the statute would treat claims in subsequent petitions quite differently

than under prior law, since it would eliminate the successiveness bar's traditional carveout for claims that could not reasonably have been presented earlier. In part II., *ante*, we adopt a different reading of section 1509(d), under which it applies only to claims that would have been deemed successive under prior law. But Friend argues that even so construed, section 1509(d) operates retroactively when the prior petition predated Proposition 66, because section 1509(d) restricts the types of claims that may be entertained in a successive petition, replacing *Clark*'s fundamental-miscarriage-of-justice exception with a narrower one limited to claims of innocence or ineligibility.[16]

Employing current statutory procedures in current litigation is not ordinarily considered a retroactive application of the statute, even where the litigation arises from events antedating the statute's effectiveness. (*Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at p. 231.) But in some circumstances a formally procedural rule may operate to retroactively affect substantive rights and expectations. Broadly speaking, whether a statute operates retroactively — and therefore impermissibly, absent express

---

[16] We consider only cases like this one, in which the prior petition predated Proposition 66 but *postdated* our decision in *Clark*. We have declined to apply our successiveness bar where the prior petition predated *Clark* because, before that decision, we had not applied a consistent preclusive rule. "*Clark* serves to notify habeas corpus litigants that we shall apply the successiveness rule when we are faced with a petitioner whose prior petition was filed after the date of finality of *Clark*." (*Robbins, supra*, 18 Cal.4th at p. 788, fn. 9.) Our analysis here does not apply to a case where the prior petition was filed before *Clark* and the subsequent one after Proposition 66.

legislative intent — is a judgment guided by "considerations of fair notice, reasonable reliance, and settled expectations." (*Landgraf*, *supra*, 511 U.S. at p. 270.) "In deciding whether the application of a law is prospective or retroactive, we look to function, not form. [Citations.] We consider the effect of a law on a party's rights and liabilities, not whether a procedural or substantive label best applies. Does the law 'change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct[?]' [Citation.] Does it 'substantially affect[] existing rights and obligations[?]' [Citation.] If so, then application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application. If not, then application to a trial of preenactment conduct is permitted, because the application is prospective." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 936–937; see also *Strauss v. Horton* (2009) 46 Cal.4th 364, 472 [focus is on whether application of the new law would "impair vested rights acquired under the prior state of the law"].)

Applying these principles, we conclude that when section 1509(d) is applied to a post-Proposition 66 petition subsequent to an initial pre-Proposition 66, post-*Clark* petition, the statute is not operating retroactively. Application of section 1509(d) in these circumstances alters no established rights or liabilities, and defeats no reasonable, settled expectations. Proposition 66 underscores the importance of presenting available claims in the first petition, but raises no retroactivity concerns because prior law already required counsel undertake all reasonable efforts to investigate and present available habeas claims rather than withholding them for presentation in a later petition.

Under *Clark* and *Reno*, counsel has the duty, in the initial petition, of investigating and presenting all claims that could be discovered and presented at that time through due diligence. (*Reno, supra,* 55 Cal.4th at p. 452; see *Clark, supra,* 5 Cal.4th at p. 775 ["A petitioner will be expected to demonstrate due diligence in pursuing potential claims. If a petitioner had reason to suspect that a basis for habeas corpus relief was available, but did nothing to promptly confirm those suspicions, that failure must be justified."].) On the other hand, our established law does not call for habeas counsel to follow every possibility in the remote hope of finding some unknown claim. (See *Robbins, supra,* 18 Cal.4th at p. 781 ["Counsel is not expected to conduct an unfocused investigation grounded on mere speculation or hunch, without any basis in triggering fact."].) If habeas corpus counsel preparing an initial petition before Proposition 66 was aware of a potentially meritorious claim of fundamental miscarriage of justice, counsel had an obligation to investigate and present that claim; he or she could not reasonably refrain from presenting it because it might fall within *Clark*'s substantive exception and be permissibly presented in a future successive petition. Nothing in Proposition 66 changes the scope of counsel's obligations on an initial habeas corpus petition: Counsel's duty remains one of reasonable diligence in investigation and presentation of claims, and counsel is still not called on to pursue purely speculative lines of investigation or to include unfounded claims in an initial petition, even if those claims fall outside section 1509(d)'s exception for innocence or ineligibility. The measure's narrowing of the substantive exception to successiveness thus does not make its application retroactive.

Analogizing to federal law, Friend relies on a federal decision holding that AEDPA's limits on second or successive petitions (28 U.S.C. § 2244(b)(2)) have a retroactive effect where the initial application for relief was filed before AEDPA, if the subsequent petition would not have been procedurally barred under pre-AEDPA law. (*In re Hanserd* (6th Cir. 1997) 123 F.3d 922; see *In re Minarik* (3d Cir. 1999) 166 F.3d 591 [discussing *In re Hanserd*].) Whatever the merits of *Hanserd*'s retroactivity reasoning, *Hanserd* is distinguishable in that it addressed an application of AEDPA that would have foreclosed consideration of a claim based on intervening case law, law upon which Hanserd could not realistically have relied in his earlier application for relief. (See *Hanserd*, at p. 924.) Regardless of when in relation to AEDPA Hanserd's earlier petition was filed, then, application of AEDPA's successiveness bar worked a severe, and in some ways unique, unfairness in Hanserd's case. For reasons explained in part II., *ante*, our construction of Proposition 66 raises no similar concerns.

In other cases, federal appellate courts have discerned no retroactive effect in application of AEDPA's provisions. (*U.S. v. Villa-Gonzalez* (9th Cir. 2000) 208 F.3d 1160, 1163; *Mancuso v. Herbert* (2d Cir. 1999) 166 F.3d 97, 101.) And still others have rejected AEDPA retroactivity claims in particular cases because the petitioner did not show objectively reasonable reliance in omitting claims from the first petition. (See *Pratt v. U.S.* (1st Cir. 1997) 129 F.3d 54, 59; *Graham v. Johnson* (5th Cir. 1999) 168 F.3d 762, 786; *Alexander v. U.S.* (7th Cir. 1997) 121 F.3d 312, 314.)

Here, if counsel on the prior, pre-Proposition 66 petition knew of an error or violation amounting to a fundamental miscarriage of justice, counsel's duty under *Clark*, *Robbins* and

*Reno* was to fully investigate and present that claim in the earlier petition. It would not have been reasonable to ignore that duty in the hope that the claim could later be presented in a successive petition under *Clark*'s substantive exception.

We therefore conclude that applying section 1509(d) to a post-Proposition 66 successive petition (following an initial pre-Proposition 66, post-*Clark* petition) raises no retroactivity concerns. While the new statutory rule relates in part to a preenactment event, the filing of the initial petition, it does not meaningfully change the legal ramifications of that event. In light of the "considerations of fair notice, reasonable reliance, and settled expectations" that govern this determination (*Landgraf, supra,* 511 U.S. at p. 270), application of section 1509(d) to a petition filed after the statute's effectiveness should not be deemed retroactive, whenever the earlier petition was filed.

On its face, Penal Code section 1509 applies to "any petition for writ of habeas corpus filed by a person in custody pursuant to a judgment of death" (*id.*, subd. (a)), and subdivision (d)'s restrictions apply to "a successive petition whenever filed." Nothing in the text or the accompanying ballot materials indicates an intent to limit these provisions to cases in which both the initial and successive petitions are filed after the measure's effective date. We conclude there is no such limit on section 1509(d)'s application.

## IV.

Finally, we consider the procedures for appellate review of a trial court's determination that one or more claims in a subsequent petition are successive within the meaning of section 1509(d).

As noted above, Proposition 66 did not explicitly address this point. Section 1509.1(c) requires a certificate of appealability for appeal from the dismissal of a successive petition, and a certificate may issue (from either the superior court or the Court of Appeal) only when there is "a substantial claim that the requirements of subdivision (d) of Section 1509 have been met." The statute does not expressly provide for issuance of a certificate upon a showing that the petition is not successive because one or more of its claims could not have been raised in an earlier petition or were omitted through ineffective assistance of counsel on the prior petition. Nor does the statute explicitly *preclude* issuance of a certificate on such a showing.[17]

Friend contends first that a dismissal for successiveness should be appealable under the provisions of Penal Code section

---

[17] The California Rules of Court are no clearer on this point. Rule 8.392 provides that the notice of appeal must identify the appeal as from denial of relief on a successive petition (rule 8.392(b)(2)), and if the superior court denied a certificate of appealability the notice must "explain how the requirements of Penal Code section 1509(d) have been met" (rule 8.392(b)(3)). On its face, this rule appears to preclude a petitioner from filing a noncertificate appeal and arguing in the briefing that the superior court erred in finding the petition successive. Left unclear, though, is whether the petitioner may seek a certificate from the Court of Appeal on the basis of a substantial showing that the petition, or some of its claims, were erroneously deemed successive. Similarly, rule 4.576(b) provides that in issuing a certificate of appealability on a successive petition the superior court "must identify the substantial claim or claims for relief shown by the petitioner and the substantial claim that the requirements of Penal Code section 1509(d) have been met." The rule neither allows nor disallows the issuance of a certificate on a substantial showing that the petition, or some of its claims, are not successive.

1509.1, subdivision (a). He acknowledges that this subdivision, by its terms, applies only to initial petitions, but argues that that term could be read to include "any petition that is not properly deemed successive," and that we should so interpret — or so reform — the statute in order to avoid the absurd and unconstitutional result that a petitioner would have no appellate recourse from the superior court's successiveness determination.

Alternatively, if a successiveness dismissal is appealable only under subdivision (c) of section 1509.1 — as the statutory text provides — Friend maintains that a certificate should issue "when the petitioner makes a substantial showing that his petition is not successive and presents a substantial claim for relief." Section 1509.1(c), he argues, may be read to permit a certificate "to issue when the petitioner has set forth a substantial argument that section 1509(d) does not apply at all — not only that the exceptions in section 1509(d) are satisfied."[18]

The Attorney General embraces Friend's alternative suggestion — that a certificate may issue on the successiveness question itself — as "giv[ing] force to the certificate of appealability requirement, while at the same time assuring review of a superior court's determination that a petition is

[18] As a third option, Friend suggests the certificate requirement might be excused for threshold issues such as successiveness while applying to the merits of the claim. He points to no textual support for this reading, though, and explains that it would amount, in practice, to permitting an appeal under Penal Code section 1509.1, subdivision (a), as an initial petition. We need not address this unsupported reading further.

successive." At the same time, the Attorney General urges us to reject Friend's primary argument — that the certificate requirement can be avoided through application of Penal Code section 1509.1, subdivision (a), to a petition found successive in the trial court — as contrary to both statutory text and purpose.

We agree with both parties that Proposition 66 can and should be read to provide a means for appealing the superior court's determination that a subsequent petition is successive. An interpretation leaving unsuccessful petitioners with no opportunity for appellate review at all would be contrary to the voters' evident intent to provide a statutory right of appeal, albeit a limited one, from denial of petitions deemed successive as well as initial petitions. Moreover, when combined with the measure's prohibition on review by writ (Pen. Code, § 1509.1, subd. (a)), such an interpretation would effectively eliminate appellate court jurisdiction over a substantial class of habeas corpus petitions — a result that would raise significant constitutional questions. (See *Briggs, supra,* 3 Cal.5th at pp. 833, 841.)

We further agree with the Attorney General that section 1509.1(c) is best read as allowing a certificate of appealability to issue on the successiveness question itself. In context, and with the understanding that section 1509(d)'s limits on successive petitions incorporate the parameters of *Clark*'s successiveness bar (see pt. II., *ante*), section 1509.1(c)'s demand for "a substantial claim that the requirements of subdivision (d) of Section 1509 have been met" is reasonably understood to include a substantial claim that the requirements of section 1509(d) *do not apply* because the claim or claims are not successive. Under this reading, as the Attorney General observes, section 1509.1(c)'s certificate requirement plays its intended screening

role: The appeal is permitted to proceed as to a disputed claim only if the petitioner is able to make a substantial showing that the claim, although presented in a subsequent petition, was not successive within the meaning of *Clark*'s rule.

As a procedure for appellate review of a superior court's determination that a subsequent petition's claim or claims are successive within the meaning of section 1509(d), an appeal under section 1509.1(c), as we interpret it, is superior to one under Penal Code section 1509.1, subdivision (a), in terms of implementing the statutory purposes. Allowing an appeal as of right under Penal Code section 1509.1, subdivision (a) would unnecessarily vitiate the screening mechanism provided in section 1509.1(c). When the superior court has determined that a subsequent petition is *not* successive, however, but has denied the petition on its merits, allowing an appeal under Penal Code section 1509.1, subdivision (a) would result in no evasion of the statute's screening mechanism, since no such screening is called for as to a nonsuccessive petition.

## V.

The Court of Appeal's order denying a certificate of appealability is reversed, and the matter is remanded to that court for it to address the successiveness question under the standard and procedures we have described. For each claim of the petition, the Court of Appeal is to determine whether petitioner has made a substantial showing that the claim is not successive within the meaning of section 1509(d), as we have construed it here (see pt. II., *ante*), and is to issue a certificate of

appealability on any claim or claims as to which that showing has been made.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Friend

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP order filed 7/15/19 – 1st Dist., Div. 3
**Rehearing Granted**

---

**Opinion No.** S256914
**Date Filed:** June 28, 2021

---

**Court:**  Superior
**County:**  Alameda
**Judge:**  C. Don Clay

---

**Counsel:**

Jon M. Sands, Federal Public Defender, Lindsey Layer and Stanley Molever, Assistant Federal Public Defenders, for Petitioner Jack Wayne Friend.

Cuauhtemoc Ortega, Interim Federal Public Defender (Central Dist. of Cal.), and Heather Williams, Federal Public Defender (Eastern Dist. of Cal.), as Amici Curiae on behalf of Petitioner Jack Wayne Friend.

Gibson, Dunn & Crutcher, Kelsey John Helland, Viola H. Li, Zhen He Tan, Theane Evangelis, Ilissa Samplin, Michael Holecek and Shaun Mathur for Attorneys for Constitutional Law as Amici Curiae on behalf of Petitioner Jack Wayne Friend.

Xavier Becerra, Attorney General, Michael J. Mongan, State Solicitor General, Lance Winters, Chief Assistant Attorney General, James William Bilderback II, Assistant Attorney General, Helen H. Hong, Deputy State Solicitor General, and Alice B. Lustre, Deputy Attorney

General, for Respondent California Department of Corrections and Rehabilitation.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lindsey Layer
Federal Public Defender
850 West Adams St,, Suite 201
Phoenix, AZ 85007
(602) 390-3125

Helen H. Hong
Deputy State Solicitor General
600 West Broadway St.
San Diego, CA 92101
(619) 783-9693

Kent S. Scheidegger
Criminal Justice Legal Foundation
2131 L. Street
Sacramento, CA 95816
(916) 446-0345