Filed 3/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JACK WAYNE FRIEND on Habeas Corpus. | A155955 (Alameda County Super. Ct. No. 81254A) |

Petitioner Jack Wayne Friend's appeal of his judgment and first petition for writ of habeas corpus were unanimously rejected by the California Supreme Court.  Thereafter, California voters passed Proposition 66, the Death Penalty Reform and Savings Act of 2016[1] (Proposition 66), an initiative measure intended "to make the system of capital punishment 'more efficient, less expensive, and more responsive to the rights of victims.' " (*In re Friend* (2021) 11 Cal.5th 720, 725 (*Friend*).)  As relevant here, Proposition 66 requires that capital habeas corpus petitions generally be presented to the sentencing court and that a successive habeas corpus petition be dismissed unless the court finds that the petitioner makes a showing of actual innocence or ineligibility for the death penalty.  If a sentencing court denies a petitioner's second petition for writ of habeas corpus on successiveness or other grounds, the petitioner may appeal that

---

[1]     (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 66, p. 212, § 1.)

decision only if the sentencing court or the Court of Appeal grants a certificate of appealability.

Here, the sentencing court denied petitioner's second petition for writ of habeas corpus and his request for a certificate of appealability. Petitioner then filed a request for a certificate of appealability in this court, which we denied. The California Supreme Court granted review, reversed our denial of petitioner's request, and remanded the matter to this court with directions to analyze whether petitioner has made a substantial showing that the claims in his second habeas corpus petition are not successive. (*Friend*, *supra*, 11 Cal.5th at pp. 747–748.)

Following the Supreme Court's instructions, we now reconsider the matter in light of the standards and procedures articulated in *Friend*. Petitioner essentially acknowledges that all the claims in his second habeas petition were either known or could and should have been discovered earlier, but he contends the claims should not be considered successive because they were omitted from his initial habeas petition due to ineffective assistance of prior habeas corpus counsel. We conclude petitioner has not made a substantial showing of claims that are not successive because he fails to allege specific facts showing the omission of the claims from the initial petition reflects incompetence of prior habeas counsel. We also conclude petitioner fails to show a substantial claim that he is either actually innocent or ineligible for the death sentence. Accordingly, we again decline to issue a certificate of appealability as to any of the claims in petitioner's second habeas corpus petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1984, petitioner robbed an Oakland bar and fatally stabbed bartender Herbert Pierucci. A jury convicted petitioner of first degree

2

murder and robbery (Pen. Code, §§ 187, 189, 211),[2] and found that he inflicted great bodily injury (§ 12022.7, subd. (a)) in connection with the robbery, and that he personally used a knife in committing both crimes (§ 12022, subd. (a)). A second jury found true a special circumstance that the murder took place during the commission of a robbery (§ 190.2 former subd. (a)(17)(i), now subd. (a)(17)(A)). At the penalty phase, the jury returned a death verdict, and the trial court entered a judgment of death. The California Supreme Court unanimously affirmed the judgment (*People v. Friend* (2009) 47 Cal.4th 1) and in 2015 denied petitioner's state habeas corpus petition. (*In re Friend*, July 29, 2015, S150208.)

In 2016, petitioner obtained counsel for federal habeas corpus proceedings. Petitioner filed his initial federal habeas petition in 2016, and an amended petition in 2017. Several of the federal habeas claims had not yet been raised in state court, so the federal court granted a stay of the federal habeas proceedings so that petitioner could return to state court to exhaust his claims.

In June 2018, petitioner filed an "exhaustion petition"—i.e., a second and subsequent petition—in the Superior Court of Alameda County. Petitioner raised six claims in this petition: Claim One: discriminatory use of peremptory challenges by the prosecutor; Claim Two: ineffective assistance of trial counsel in jury selection and investigation of evidence for trial; Claim Three: unconstitutionality of imposing the death penalty due to petitioner's organic brain damage; Claim Four: denial of due process by the participation of Supreme Court Associate Justices Ming W. Chin and Carol A. Corrigan in prior proceedings; Claim Five: introduction of statements taken

---

[2]     All further statutory references are to the Penal Code unless otherwise indicated.

by police in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); and Claim Six: ineffective assistance of appellate counsel in failing to raise the *Miranda* claim on direct appeal. (*Friend*, *supra*, 11 Cal.5th at p. 724, fn. 1.)

Pursuant to the provisions of Proposition 66, the superior court dismissed all of the claims in the exhaustion petition as successive. (§ 1509, subd. (d) (1509(d)).) The court also denied petitioner's request for a certificate of appealability. (§ 1509.1, subd. (c) (1509.1(c)).)

Petitioner filed a notice of appeal and, later, a request to this court for a certificate of appealability (sometimes referred to as "certificate request"). We denied the certificate request, and the notice of appeal was marked inoperative. The California Supreme Court granted review and ultimately remanded the matter to this court with directions to analyze whether the claims in petitioner's exhaustion petition are successive under the standard and procedures described in its opinion. (*Friend*, *supra*, 11 Cal.5th at pp. 747–748.) We undertake that task below.

## DISCUSSION

Prior to the passage of Proposition 66, California inmates seeking to collaterally attack their death judgments were required to file their state habeas corpus petitions directly in the California Supreme Court. (*Friend*, *supra*, 11 Cal.5th at p. 726.) Whenever an inmate filed a second or subsequent habeas petition, the Supreme Court engaged in the following two-step analysis to assess application of the procedural bar on successive claims. First, the court would determine whether the petitioner who filed a second or subsequent petition had "adequately justified his or her failure to present his or her claims in an earlier petition." (*Id.* at p. 728.) "In the rare instance in which the petitioner [was] able to adequately justify not having raised the

4

claim earlier, the successiveness bar [did] not apply." (*Ibid.*) But if a petitioner could not adequately justify the failure to raise a claim earlier, the court proceeded to the second step of the analysis. (*Ibid.*) At this second step, the court would determine whether the petitioner had made a showing that the successive claim fell within the four-part fundamental miscarriage of justice exception set out in *In re Clark* (1993) 5 Cal.4th 750 (*Clark*).[3] (*Friend*, at p. 728.) If the petitioner could not show that the claim qualified for consideration under the fundamental miscarriage of justice exception, the claim was barred as successive. (*Ibid.*)

As the Supreme Court explained, "the successiveness bar was 'designed to ensure legitimate claims [were] pressed early in the legal process,' " and it operated to preclude "consideration of claims that were unjustifiably omitted from earlier petitions" while providing " 'a "safety valve" for those rare or unusual claims that could not reasonably have been raised at an earlier time.' " (*Friend*, *supra*, 11 Cal.5th at p. 728.)

**A. Proposition 66 and the Supreme Court's *Friend* decision**

To advance its goal of resolving death penalty cases more expeditiously, Proposition 66 introduced a different process for handling and resolving capital habeas corpus petitions. (*Friend*, *supra*, 11 Cal.5th at pp. 725, 727.) The provisions relevant to the issues in this case are found in sections 1509 and 1509.1.

---

[3] "In *Clark*, [the California Supreme Court] identified four situations in which the fundamental miscarriage exception is satisfied: (1) a highly prejudicial error of constitutional magnitude; (2) the petitioner's actual innocence; (3) presentation in a capital trial of a grossly misleading and highly prejudicial profile of the petitioner; or (4) conviction or sentencing under an invalid statute." (*Friend*, *supra*, 11 Cal.5th at p. 728.)

Section 1509 requires that capital habeas corpus petitions generally be presented to the sentencing court instead of the California Supreme Court. (§ 1509, subd. (a).) Section 1509(d) marks a departure from the prior standard set out in *Clark* for considering claims in a successive petition by providing: "[A] successive petition whenever filed *shall be dismissed unless the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she was convicted or is ineligible for the sentence. . . .* 'Ineligible for the sentence of death' means that circumstances exist placing that sentence outside the range of the sentencer's discretion." (Italics added.)

In turn, section 1509.1(c) provides for an appeal of a sentencing court's denial of relief on a successive petition, as follows: "The petitioner may appeal the decision of the superior court denying relief on a successive petition only if the superior court or the court of appeal grants a certificate of appealability. A certificate of appealability may issue under this subdivision only if the petitioner has shown *both a substantial claim for relief*, which shall be indicated in the certificate, *and a substantial claim that the requirements of subdivision (d) of Section 1509 have been met.* An appeal under this subdivision shall be taken by filing a notice of appeal in the superior court within 30 days of the court's decision. The superior court shall grant or deny a certificate of appealability concurrently with a decision denying relief on the petition. The court of appeal shall grant or deny a request for a certificate of appealability within 10 days of an application for a certificate." (Italics added.)

In *Friend*, the California Supreme Court addressed the meaning of the term "successive" and the scope of the changed standards regarding successive petitions in sections 1509 and 1509.1. (*Friend*, *supra*, 11 Cal.5th

6

at pp. 725, 729–741.) The Supreme Court construed the term "successive" so as to apply Proposition 66's successiveness provisions only when petitioners filing a second or subsequent petition have not adequately justified the failure to present their claims in an earlier habeas petition. (*Id.* at pp. 729, 731–732.) The court summarized its conclusions as follows: "Proposition 66's successiveness restrictions do not limit the consideration of claims that could not reasonably have been raised earlier, such as those based on newly available evidence or on recent changes in the law—claims that have not previously been thought subject to successiveness limitations. Thus, under the law as amended by Proposition 66, habeas corpus petitioners must make a showing of actual innocence or death penalty ineligibility if they seek a second chance to make an argument they could have made earlier. No such requirement applies to the habeas petitioner who raises a newly available claim at the first opportunity." (*Id.* at p. 724.) The court indicated that its reading of Proposition 66's successiveness standards preserved the two-step inquiry employed in traditional habeas corpus practice, but at the second step it replaces *Clark's* four-part fundamental miscarriage of justice exception with a narrower exception restricted to claims of actual innocence or death penalty ineligibility. (See *Friend*, at pp. 729, 739–740.)

The Supreme Court also considered Proposition 66's provisions for the appealability of a superior court's dismissal for successiveness. (*Friend, supra*, 11 Cal.5th at p. 745.) The court began by observing that section 1509.1(c) requires a certificate of appealability from the superior court or the Court of Appeal in order to appeal the dismissal of a successive petition, and that such a certificate may issue "only when there is 'a substantial claim that the requirements of [section 1509(d)] have been met.' " (*Friend*, at p. 745.) The court then construed section 1509.1(c) as permitting

7

the issuance of a certificate of appealability to address the question of successiveness, explaining that a certificate is properly issued upon "a substantial showing that the claim, although presented in a subsequent petition, was not successive within the meaning of *Clark's* rule." (*Friend*, at pp. 746–747.)

As the Supreme Court noted in *Friend*, a claim is ordinarily not successive under *Clark* when the petitioner offers "adequate justification for the failure to present a particular claim in an earlier petition." (*Friend*, *supra*, 11 Cal.5th at p. 731, citing *Clark*, *supra*, 5 Cal.4th at p. 774.) Under *Clark*, the petitioner may avoid a finding of successiveness by showing " 'the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made' and the claim is 'asserted as promptly as reasonably possible.' " (*Friend*, at p. 731.) Claims based on changes in the law that are retroactively applicable to final judgments and claims premised on ineffective assistance of prior counsel may also justify presentation in a subsequent petition. (*Ibid*.)

The Supreme Court also concluded that section 1509's restrictions on successive habeas petitions properly apply where, as here, a first petition was filed before the effective date of Proposition 66 and a subsequent petition is filed after the measure took effect. (*Friend, supra*, 11 Cal.5th at pp. 742–745.) Accordingly, the court reversed this court's denial of petitioner's request for a certificate of appealability and remanded the matter with directions to "address the successiveness question under the standard and procedures" described. (*Id*. at p. 747.) The court instructed: "For each claim of the petition, the Court of Appeal is to determine whether petitioner has made a substantial showing that the claim is not successive within the meaning of section 1509(d), as we have construed it here . . . , and is to issue

8

a certificate of appealability on any claim or claims as to which that showing has been made." (*Id.* at pp. 747–748.) We turn to this task now.

## B. First step: Does petitioner show adequate justification for failure to raise his claims previously?

Following the Supreme Court's instructions, we first determine whether petitioner has made a substantial showing that his claims are not successive, which entails consideration of whether petitioner has an adequate justification for his failure to present his claims in his earlier habeas petition. (*Friend, supra,* 11 Cal.5th at pp. 728–729.) As indicated, "[a]dequate justifications include the inability to bring the claim earlier," such as where the claim depends on newly available evidence, on certain changes in the law, or on ineffective assistance of prior counsel. (*Id.* at pp. 728, 731.) In reviewing petitioner's explanation and justification for the delayed presentation of his claims, we "consider whether the facts on which the claim is based, although only recently discovered, could and should have been discovered earlier." (*Clark, supra,* 5 Cal.4th at p. 775.)

To recap, petitioner raises six claims in his exhaustion petition, all of which are included in his certificate request: Claim One: discriminatory use of peremptory challenges by the prosecutor; Claim Two: ineffective assistance of trial counsel in jury selection and investigation of evidence for trial[4]; Claim Three: unconstitutionality of imposing the death penalty due to

---

[4] In Claim Two, petitioner raises six subclaims concerning ineffective assistance of trial counsel. Specifically, he alleges that trial counsel: failed to rehabilitate prospective jurors who were erroneously dismissed under *Wainwright v. Witt* (1985) 469 U.S. 412 (*Witt*), or failed to object to their improper dismissal for cause (Claim Two(A)); failed to challenge the prosecutor's discriminatory use of peremptory strikes (Claim Two(B)); failed to investigate and present evidence of defendant's organic brain damage (Claim Two(C)); failed to investigate and present evidence of Fetal Alcohol

petitioner's organic brain damage; Claim Four: denial of due process resulting from the participation of Supreme Court Associate Justices Chin and Corrigan in prior proceedings; Claim Five: introduction of statements taken by police in violation of *Miranda*; and Claim Six: ineffective assistance of appellate counsel in failing to raise the *Miranda* claim on direct appeal. (*Friend*, *supra*, 11 Cal.5th at p. 724, fn. 1.)

As petitioner appears to acknowledge, all six claims were either known or could and should have been discovered earlier. Petitioner, however, argues his claims should not be considered "successive" within the meaning of *Friend* and *Clark* because they were omitted from his initial habeas petition due to ineffective assistance of prior habeas corpus counsel. We turn to address whether petitioner has made a substantial showing that his claims are not successive due to prior habeas counsel's alleged ineffectiveness in their non-presentation.

*1. General Principles and the Pleading Requirement*

We begin with general principles. When reviewing habeas matters, we bear in mind that " '[h]abeas corpus is an extraordinary, *limited* remedy against a *presumptively fair and valid* final judgment.' [Citation.] Courts *presume the correctness of a criminal judgment . . . .*" (*In re Reno* (2012) 55 Cal.4th 428, 450 (*Reno*), some italics added.) "If a criminal defendant has unsuccessfully tested the state's evidence at trial and appeal and wishes to mount a further, collateral attack, ' "all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them." ' " (*Id.* at p. 451.)

---

Spectrum Disorder (Claim Two(D)); and failed to investigate a penalty phase witness (Claim Two(E)).

Moreover, when reviewing a claim of ineffective assistance, we "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (*Harrington v. Richter* (2011) 562 U.S. 86, 104 (*Harrington*), quoting *Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*).) "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance . . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (*Strickland*, at p. 689.)

In line with the general requirement that a habeas petition state fully and with particularity the facts on which relief is sought (*People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*)), capital habeas petitioners have long been subject to a "strict pleading standard" pursuant to which they bear the burden of alleging specific facts on which they rely to explain and justify a successive petition (*Reno*, *supra*, 55 Cal.4th at pp. 455, 464; cf. *In re Robbins* (1998) 18 Cal.4th 770, 787 (*Robbins*) [specificity in pleading required to avoid the bar of substantial delay]). As directly relevant here, the Supreme Court reiterated in *Friend* that a petitioner seeking to avoid the successiveness bar on grounds of ineffective assistance of prior counsel must " 'allege with specificity the facts underlying the claim that the inadequate presentation of an issue or omission of any issue reflects incompetence of counsel.' " (*Friend*, *supra*, 11 Cal.5th at p. 731, fn. 5.) Conclusory allegations are inadequate to satisfy a petitioner's pleading burden (*Reno*, at p. 500; *Duvall*, at p. 474), and

11

"normally the justification for raising a claim must be stated in the petition itself and not in later pleadings" (*Reno*, at p. 458).[5]

The legal test for ineffective assistance of counsel is the same whether at trial, on appeal, or in collateral proceedings, and requires a showing of *both* objectively deficient performance and prejudice. (*Reno, supra*, 55 Cal.4th at pp. 463–464; *Strickland, supra*, 466 U.S. at p. 687.) To avoid the procedural bar of successiveness via a claim of ineffective assistance, a petitioner must plead specific facts concerning *both* of these prongs. In *Reno*, for example, the California Supreme Court indicated that petitioners who rely on prior habeas counsel's alleged ineffective assistance to avoid procedural bars must do more than allege that a previously omitted claim has merit. (*Reno, supra*, 55 Cal.4th at pp. 464–465, 503.) The court indicated petitioners should also allege facts showing that omission of the claim was incompetent. Relevant to such a showing are facts that illuminate prior habeas counsel's actions or omissions, such as what counsel knew or should have known when litigating the earlier habeas petition, and also why counsel did not previously investigate or raise the newly presented claim. (*Id.* at pp. 465, 503.)

That a petitioner must allege more than the omission of a potentially meritorious claim has long been settled. As the Supreme Court reinforced in

---

[5] Effective April 25, 2019, rule 8.392(b)(3) of the California Rules of Court provides that a request to the Court of Appeal for a certificate of appealability "must identify the petitioner's claim or claims for relief *and explain how the requirements of Penal Code section 1509(d) have been met.*" (Italics added.) Because the requirements for complying with sections 1509 and 1509.1 were unclear before the Supreme Court decided *Friend, supra*, 11 Cal.5th 720, we will consider all of petitioner's arguments pertaining to successiveness, whether raised in the exhaustion petition and exhibits thereto, the request for a certificate of appealability, or petitioner's post-remand supplemental brief.

*Friend*, " 'mere omission of a claim "developed" by new counsel *does not raise a presumption that prior habeas corpus counsel was incompetent, or warrant consideration of the merits of a successive petition.*' (*Clark, supra*, 5 Cal.4th at p. 780.)" (*Friend, supra*, 11 Cal.5th at p. 731, fn. 5, italics added); see *Reno, supra*, 55 Cal.4th at p. 465.) Habeas counsel, like appellate counsel, "performs *properly* and *competently* when he or she exercises discretion and presents *only* the strongest claims instead of every conceivable claim." (*Robbins, supra*, 18 Cal.4th at p. 810; cf. *Smith v. Murray* (1986) 477 U.S. 527, 536 [the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy"]; *Yarborough v. Gentry* (2003) 540 U.S. 1, 7–8 (*Yarborough*) ["Even if some of the arguments would unquestionably have supported the defense, it does not follow that counsel was incompetent for failing to include them. Focusing on a small number of key points may be more persuasive than a shotgun approach."].)

Apart from requiring that habeas corpus petitions state "fully and with particularity the facts on which relief is sought," the Supreme Court has indicated that habeas petitions should also "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*Duvall, supra*, 9 Cal.4th at p. 474; cf. *Robbins, supra*, 18 Cal.4th at p. 795, fn. 16.) We think it equally important that a capital petitioner's request to the Court of Appeal for a certificate of appealability do likewise. The reason for this is straightforward and practical. Under Proposition 66, a certificate of appealability may issue "only if the petitioner has shown both a substantial claim for relief, . . . and a substantial claim that the requirements of subdivision (d) of Section 1509 have been met," and the appellate court must

13

decide whether to grant or deny a certificate within 10 days of receiving the petitioner's request. (§ 1509.1(c).) Unless the capital record on appeal has been lodged with the appellate court, the pre-Proposition 66 practice of simply citing to transcript pages in the record is unhelpful to a meaningful evaluation of whether the requisite substantial claims have been presented.

As the United States Supreme Court has noted, "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." (*Harrington*, *supra*, 562 U.S. at p. 105.) When scrupulously applied together, the *Strickland* standard and the strict pleading requirement will guard against the easy sidestepping of the successiveness bar and promote Proposition 66's goal to resolve death penalty cases in a manner that is " 'more efficient, less expensive, and more responsive to the rights of victims.' " (*Friend*, *supra*, 11 Cal.5th at p. 725.)

With the foregoing in mind, we now consider defendant's request for a certificate of appealability.

### 2. *Petitioner's Request for a Certificate of Appealability*

#### (a) *Claim One and Claim Two(B)*

Claim One of petitioner's exhaustion petition alleges a *Batson/Wheeler* violation, i.e., that the prosecutor impermissibly used peremptory strikes to exclude minorities and women from his juries. Claim Two(B) relatedly alleges that trial counsel was ineffective in failing to object on *Batson/Wheeler* grounds during jury selection.

Specifically, petitioner alleges that at his first trial, seven of 17 peremptory challenges were used to exclude prospective jurors who were

14

Filipino, African-American, and Latino. Then at his second trial, 12 of 19 peremptory challenges were allegedly used to exclude women and racial minorities, as well as the only two prospective Jewish jurors. As support for his claim that the prosecutor acted with a discriminatory purpose, petitioner attaches exhibits to his petition that purport to show: (1) the Alameda County District Attorney's Office had a practice of removing Jewish venirepersons, as supported by a survey indicating that very few Jewish jurors sat on various capital juries in Alameda County in the 1980s and 1990s; (2) the jury selection notes of the same prosecutor in a *different* capital case reflecting that the prosecutor made notations of the characteristics of prospective jurors, including their race[6]; (3) in a 1980 trial, the same prosecutor referred to a defendant as " 'no dumb Portugee' "; and (4) two years after petitioner's second trial, the same prosecutor was heard using a racial epithet to refer to two men who were caught robbing a friend's mother.

If we were to confine our review to the foregoing, petitioner certainly raises the spectre that there *may* be some merit to his *Batson/Wheeler* claims. As discussed, however, pleading a claim of ineffective assistance requires more than merely pleading or otherwise showing that newly developed claims might have merit. (*Friend*, *supra*, 11 Cal.5th at p. 731, fn. 5.) Petitioner must also plead specific factual allegations showing that prior habeas counsel acted in an objectively deficient manner by failing to present such claims. This is where petitioner falls short.

In support of the *Batson/Wheeler* claim and related ineffective assistance claim, the exhaustion petition attaches a brief one-page declaration from Supervising Deputy State Public Defender Evan Young—

---

[6] Petitioner makes no mention of prosecutorial jury selection notes in his own case.

15

the attorney who represented him both in his direct appeal and in his previous state habeas corpus matter—but the portions of the petition raising these claims otherwise fail to mention Young, much less offer specific factual allegations regarding Young's omission of these claims from the initial habeas petition. For instance, the petition does not allege what facts Young knew or should have known and why, and it is vague as to whether she might have considered such claims. (*Reno*, *supra*, 55 Cal.4th at pp. 464–465, 503.) Indeed, Young's only comment regarding the newly developed *Batson/Wheeler* claims is: "There was no strategic reason not to include these claims."

In *Reno*, *supra*, 55 Cal.4th 428, a similar declaration was rejected as insufficient to warrant consideration of claims on the merits. There, a capital inmate's second state habeas petition attempted to overcome the procedural timeliness bar by alleging the ineffectiveness of the attorney who represented him both on appeal and in his first habeas petition. (*Reno*, *supra*, 55 Cal.4th at pp. 443, 463.) Just like the situation here, the petitioner provided a declaration in which prior counsel declared he had no tactical reason for not raising claims. (*Id.* at p. 464.) In addressing the petitioner's showing, the *Reno* court deemed it significant that the petitioner had made "no serious attempt to justify why such claims were not raised on appeal or in [the petitioner's] first habeas corpus petition." (*Id.* at p. 443.) More specifically, the court described the petitioner's allegations of deficient performance as being "for the most part vague, conclusory, and bereft of persuasive supporting factual allegations, relying largely on [counsel's] blanket, generic assertion of his own alleged failings." (*Id.* at p. 469.) Based on the petitioner's showing, the *Reno* court held there was no basis for concluding that counsel's failure to previously raise the claims reflected objectively deficient representation. (*Id.* at pp. 464–465.)

16

The *Reno* court reached a similar conclusion in addressing the "*Clark/Horowitz*" bar against the piecemeal presentation of claims by successive proceedings. (*Reno, supra*, 55 Cal.4th at pp. 501–502.) In that analysis, the court discussed "claim No. 85" as an example of such a claim and noted the petitioner merely addressed the *Clark/Horowitz* bar in his subsequent habeas petition with a global assertion that all known claims were included so that the court could assess the cumulative effect of all the errors in the case. (*Id.* at p. 502.) Moreover, the petitioner's informal reply alleged nothing to justify the belated assertion of claim No. 85, and his traverse presented nothing more than unsupported assertions that prior habeas counsel was ineffective. (*Ibid.*) On this score, the *Reno* court noted the only supporting facts alleged were: (i) prior habeas counsel's "general declaration that . . . claim No. 85 is potentially meritorious and he had no tactical reason for failing to raise it in petitioner's first habeas corpus petition"; and (ii) the declaration of an attorney expert that prior habeas counsel was ineffective for failing to raise dozens of claims on appeal or in the preceding habeas corpus petition. (*Id.* at p. 503.) The court found both declarations "woefully lacking in detail" and concluded neither "provides a basis to conclude that competent counsel should have raised claim No. 85 in particular or that 'the issue is one which would have entitled the petitioner to relief had it been raised and adequately presented in the initial petition, *and* that counsel's failure to do so reflects a standard of representation falling below that to be expected from an attorney engaged in the representation of criminal defendants.' " (*Ibid.*, italics added.)

As in *Reno*, the lack of factual specificity in petitioner's exhaustion petition and other submissions, including in Young's declaration, is highly problematic to establishing a claim of ineffective assistance.

17

We note petitioner asserts that "no information about jurors' race was explicitly collected on juror questionnaires, and jurors' race came up very few times during voir dire." But petitioner does not allege that either he or his murder victim was a member of a minority group, or that the proceedings were racially charged. While such matters are not by themselves dispositive, our review of the Supreme Court's opinion affirming petitioner's death judgment discloses potential reasons why a professionally competent attorney would not have presented a habeas claim based on trial counsel's failure to object to the prosecutor's peremptory challenges. As the court's opinion recounts, petitioner testified at the penalty phase that he "had been a member of the Ku Klux Klan." (*People v. Friend*, *supra*, 47 Cal.4th at p. 26.) Additionally, a penalty phase witness testified that after petitioner raped her at knifepoint, he "wanted her to come stay at his apartment because he disapproved of her living with a Black man. A week later, [petitioner] threatened to rape her again if she did not leave the Black man's apartment." (*Id.* at p. 24.) The exhaustion petition makes no mention of this trial evidence and tenders no declaration from trial counsel indicating whether or not the prospect of having such evidence admitted at trial informed his voir dire strategy. Nor does the petition rule out the likelihood that Young considered or spoke with trial counsel about such evidence when preparing the initial habeas petition.

All this brings into acute focus the importance of the strict pleading requirement discussed above. On its face, the appellate opinion provides an obvious possible explanation for why petitioner's trial counsel did not object to the dismissal of minority, female, or Jewish jurors. (See *People v. Morrison* (2004) 34 Cal.4th 698, 710 [noting that silence on the part of defense counsel may mean they "found one or more of the jurors objectionable from a defense

18

standpoint"].) In view of the specific circumstances of petitioner's trial, as well as petitioner's failure to allege with specificity the facts underlying his claims that omission of the *Batson/Wheeler* and related ineffective assistance claims reflects incompetence of prior habeas counsel (*Friend, supra*, 11 Cal.5th at p. 731, fn. 5), we cannot say petitioner has made a substantial showing that these claims are not successive.

We harken back to the presumption that counsel provides competent assistance, and that " '[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect.' " (*Yarborough, supra*, 540 U.S. at p. 8.) Claims One and Two(B) allege no facts casting doubt on the validity of that presumption here.

### (b) *Claim Two(C) and Claim Two(D)*

The Supreme Court's appellate opinion recounts that as part of the defense case in mitigation at the penalty phase, Dr. Richard L. Basford, a physician who treated petitioner for three years beginning in 1980, testified that he diagnosed petitioner as suffering from chronic alcoholism and nerve loss in the brain as a result of chronic alcoholism. (*People v. Friend, supra*, 47 Cal.4th at p. 27.) Additionally, Dr. Joseph Izzo, a neurosurgeon, testified for the defense that petitioner's electroencephalogram (EEG) was " 'minimally abnormal' " and provided minimal evidence of left temporal abnormality. (*Ibid.*) Further, Dr. Karen Gudiksen, a psychiatrist who interviewed petitioner for approximately 10 hours over five sessions, testified as to her conclusion that petitioner suffered from chronic alcoholism with some mild organic brain impairment, the latter of which was "probably caused by his excessive consumption of alcohol, his many head injuries, and his use of inhalants, such as sniffing gasoline." (*Id.* at pp. 26–27.) Adding to

19

the foregoing, the exhaustion petition alleges that both Dr. Basford and Dr. Gudiksen indicated in their trial testimony that petitioner was a candidate for fetal alcohol syndrome because his mother was a chronic alcoholic.

Notwithstanding trial counsel's presentation of such testimony, Claim Two(C) of the exhaustion petition posits that trial counsel was ineffective in failing to investigate, develop, and present evidence of petitioner's organic brain damage. Claim Two(D) of the exhaustion petition relatedly alleges that trial counsel was ineffective in failing to investigate and present evidence of fetal alcohol spectrum disorder (FASD). The petition alleges, among other things, that had trial counsel properly investigated the issues and timely arranged for an evaluation by appropriate experts, counsel could have shown that petitioner has brain damage and impairments in line with the results of the recently performed neuropsychological and psychiatric testing attached as exhibits to the petition.

None of petitioner's submissions, however, alleges specific facts indicating that Young performed deficiently in omitting Claim Two(C) and Claim Two(D) from the initial habeas petition. Young's habeas declaration states only that she had a neuropsychologist, Dr. Dale Watson, evaluate petitioner in 2003 and 2006 and that she did not seek further neurological evaluation or brain imaging. Proffering the characterization that Dr. Watson's testing was "consistent" or "congruous" with the recent testing that current habeas counsel developed through other medical professionals, petitioner essentially alleges Young was ineffective because she did not do *more* neuropsychological testing to obtain the same results as the recent testing. But the law is settled that " '[c]ompetent representation does not demand that counsel seek repetitive examinations of the defendant until an

20

expert is found who will offer a supportive opinion.' " (*People v. Wash* (1993) 6 Cal.4th 215, 270, and cases cited.)

Moreover, petitioner fails to set out any specific factual allegations describing the actual results of the 2003 and 2006 testing or elaborating on Young's decision to forgo further testing. We can glean some insight into the results of Dr. Watson's testing from the report of Dr. Paul Connor, which was attached as an exhibit to the exhaustion petition. Dr. Connor had evaluated petitioner in 2017 and summarized Dr. Watson's conclusions as follows: "Overall, Dr. Watson indicated that 'The results of neuropsychological evaluation do not suggest marked deficits in neuropsychological functions. The summary measures are inconsistent in the degree of impairment suggested, with the most sensitive indicators pointing to potential deficits but others suggesting otherwise. There are some signs of difficulties with mental flexibility but his intellectual functions and memory functions are largely intact. Problems in the speed of information processing are also suggested." In light of Dr. Connor's remarks, and in the absence of factually specific allegations to the contrary, Dr. Watson's test results appear to be, at best, inconclusive for purposes of further developing and presenting habeas claims predicated on organic brain damage and FASD.

Additionally, it is questionable whether evidence and argument seeking to portray petitioner as having serious brain damage would have been persuasive to the jurors, who saw and heard petitioner testify on his own behalf at both phases of trial. (*People v. Friend*, *supra*, 47 Cal.4th at pp. 17–19, 25–26.) The petition makes no showing, by way of allegation or citation to the record, that petitioner had difficulty in recalling events or in comporting himself while on the stand. Indeed, petitioner's character witnesses at the penalty phase gave testimony that appears to counter a claim of serious brain

21

damage or cognitive impairment.  (*Id*. at pp. 27–28.)  One such witness—an attorney who worked on a civil lawsuit originally filed by petitioner on behalf of himself and other inmates—testified that she found petitioner "to be very focused, sincere, and helpful" in their interactions over the course of the lawsuit.  (*Id*. at p. 28.)  Another witness, a deacon who ministered to defendant one-on-one over a five-year period, described him as a "serious student."  (*Ibid*.)

Given the record and the allegations before us, petitioner has not adequately pled a claim that Young's omission of Claims Two(C) and Two(D) in his first petition was ineffective.  As such, petitioner has not made a substantial showing justifying a certificate of appealability on these claims based on ineffective assistance of prior counsel.  (*Friend*, *supra*, 11 Cal.5th at p. 731, fn. 5.)

*(c)  Claim Two(A)*

Claim Two(A) alleges that trial counsel was ineffective in failing to rehabilitate 10 prospective jurors who were erroneously dismissed under the standard in *Witt*, *supra*, 469 U.S. 412 and in failing to object to their improper dismissal for cause.

Not only are the exhaustion petition and certificate request devoid of any allegation regarding Young's supposedly deficient performance in omitting this claim from the initial habeas petition, but Young herself does not even mention this claim in her habeas declaration.

Petitioner's post-remand supplemental brief offers a conclusory allegation that Young was ineffective in failing to raise this claim in the initial habeas petition.[7]  But the brief lacks specific factual allegations

---

[7]    Petitioner's allegations on this point are as follows: "prior habeas counsel neglected to raise trial counsel's ineffectiveness . . . .  These omissions

regarding Young's reasons for omitting this claim, and there is no indication Young was asked about this matter but refused to answer. It is clear, however, that the Supreme Court rejected Young's appellate argument that the trial court committed *Witt* error in excusing what appear to be the same 10 prospective jurors at issue in the exhaustion petition[8] and that the court upheld each of their dismissals with a detailed analysis. (*People v. Friend, supra*, 47 Cal.4th at pp. 56–62.) For example, the Supreme Court observed that one of the prospective jurors at issue stated he had " 'very strong biases about the death penalty,' " and the case as described to him did not rise to his " 'level of expectation' as to what a death penalty case should be." (*Id.* at pp. 57–58.) It also noted that another prospective juror said she could vote for the death penalty for Hitler, but in " 'all reasonable circumstances' " she would not, and the case as described to her by the court was not sufficiently grave to justify the death penalty. (*Id.* at pp. 58–59.)

Petitioner tenders no specific allegations indicating how trial counsel could have rehabilitated these or any of the other prospective jurors he claims were improperly dismissed. Indeed, as the Supreme Court explains, "many prospective jurors 'simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these

---

were neither strategic nor reasonable: counsel understood the importance of the issue because she argued on direct appeal that the trial court improperly struck the jurors. [Citations.] Further, trial counsel's inadequate participation in jury selection 'was clear and apparent on the face of the . . . transcript.' [Citation.] Failure to include this claim fell below the standard of care, and Mr. Friend would have been entitled to relief had it been presented. [Citation.]"

[8] Petitioner indicates that the jurors at issue in his exhaustion petition are the same ones who were at issue in the direct appeal. The initials given to the prospective jurors in the direct appeal opinion match the full names of the jurors given in the exhaustion petition.

[prospective jurors] may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.'" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 252, quoting *Witt, supra,* 469 U.S. at pp. 424–426.) Given the Supreme Court's rejection of Young's *Witt*-based arguments on appeal, and the lack of specificity in petitioner's allegations, we are unable to conclude that petitioner has adequately pled the claim that Young's failure to raise Claim Two(A) in the first petition was ineffective or that petitioner has made a substantial showing that this claim is not successive. (*Friend, supra,* 11 Cal.5th at p. 731, fn. 5.)

### (d) Claim Two(E)

What remains of petitioner's ineffective assistance of trial counsel claims is Claim Two(E), which alleges that the attorney representing him at his second trial was deficient in failing to investigate a penalty phase witness who testified that defendant raped her and also assaulted a friend of hers who confronted him about the rape. Petitioner claims this attorney did not object when the prosecution did not give them a chance to speak with her, and unreasonably relied on the prosecution's investigation and did not independently investigate the witness's criminal history for impeachment evidence.

In support of this claim, petitioner attaches documents to his exhaustion petition showing that this witness was charged in 1989 in Oregon with misdemeanor driving under the influence (DUI), that she was ordered into a diversion program, and that the case was ultimately dismissed. But

24

petitioner fails to allege or otherwise show what facts should have put trial counsel on notice of this out-of-state DUI, and he offers no analysis supporting his assumption that the conduct underlying the DUI charge would have been admissible for impeachment. (See *People v. Wheeler* (1992) 4 Cal.4th 284, 290–292, 295–297; *People v. Castro* (1985) 38 Cal.3d 301, 316–317; *In re Kelley* (1990) 52 Cal.3d 487, 494.)

Petitioner also alleges and attaches documents showing that *after* his trial, the witness "faced repeated charges for DUI and theft, as well as attempting to elude police, assault, and possession of marijuana." It is unclear, however, why such post-trial events are relevant.[9]

Again, petitioner's exhaustion petition and certificate request set forth no allegations whatsoever regarding Young's omission of this claim from the initial habeas petition, and Young's declaration is silent on the matter. Petitioner's post-remand supplemental brief does allege that Young was ineffective in failing to raise this claim in the initial habeas petition, though it inadequately does so in conclusory fashion.

Given such circumstances, petitioner's papers provide no basis for concluding that the omission of Claim Two(E) from the initial petition reflects incompetence of counsel. (*Friend*, *supra*, 11 Cal.5th at p. 731, fn. 5.)

*(e)  Claim Three*

Claim Three of his exhaustion petition argues that the holding in *Atkins* v. *Virginia* (2002) 536 U.S. 304 (*Atkins*) banning capital punishment

---

[9]     Petitioner additionally states the Los Angeles Police Department and California Department of Justice have denied his requests for the witness's records while she was living in California around the time of the alleged rape. He does not explain how his trial attorney or Young would have been able to access such records.

25

for defendants suffering from "intellectual disability"[10] should be extended to persons, such as himself, who live with organic brain damage. But neither the exhaustion petition nor the certificate request sets forth any factual allegations that, if proved, would establish Young's ineffectiveness in omitting this claim from the initial habeas petition. Young herself does not mention this matter in her habeas declaration.

Petitioner's post-remand supplemental brief alleges in a two-sentence paragraph that Young "should have been aware that the unconstitutionality of executing those with organic brain impairment was a timely and relevant issue in the litigation of capital cases and raised this claim in Mr. Friend's initial state habeas petition," and that "[h]ad counsel raised this claim, there is a reasonable probability that Mr. Friend would have obtained relief." These conclusory allegations are insufficient.

Although petitioner presents no specific factual allegations illuminating why Young did not present this claim before, the reason appears self-evident. Petitioner cites no legal authority demonstrating that Claim Three was a viable claim at the time of Young's representation. Establishing a constitutional bar to capital punishment generally requires evidence that " 'evolving standards of decency' " mark death as an excessive punishment for a group of offenders. (*Roper v. Simmons* (2005) 543 U.S. 551, 560–561.) "Proportionality review under those evolving standards should be informed by ' "objective factors to the maximum possible extent," ' " and "the 'clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.' " (*Atkins*, *supra*, 536 U.S. at p. 312.)

---

[10] The term "intellectual disability" has replaced the term "mental retardation" used in past cases, such as *Atkins*. (*People v. Boyce* (2014) 59 Cal.4th 672, 717, fn. 24 (*Boyce*).)

Here, petitioner makes no showing that any legislature in any capital punishment jurisdiction in this country has categorically banned death sentences for defendants with organic brain damage. And though petitioner cites three pre-*Atkins* cases to show that Young should have known this was an issue warranting litigation, these cases all *rejected* contentions that the death penalty was disproportionate to the defendants' culpability because of brain damage. (*People v. Beeler* (1995) 9 Cal.4th 953, 995; *People v. Poggi* (1988) 45 Cal.3d 306, 348; *Odle v. Vasquez* (N.D.Cal. 1990) 754 F.Supp.749, 761–764.)

In light of the above, petitioner fails to allege facts that, if proved, would show that the omission of Claim Three from the initial habeas corpus petition reflects incompetence of counsel or resulting prejudice. (*Friend, supra*, 11 Cal.5th at p. 731, fn. 5.)

### (f) Claim Four

Claim Four of the exhaustion petition contends petitioner's rights were violated because Supreme Court Associate Justices Chin and Corrigan— former members of the Alameda County District Attorney's Office—did not recuse themselves from deciding his direct appeal, and because Justice Chin—unlike Justice Corrigan—did not recuse himself from deciding petitioner's initial habeas petition. The exhaustion petition contains no allegations regarding Young's omission of this claim from the initial habeas petition, and Young's declaration accompanying the exhaustion petition does not mention the matter.

In his certificate request and post-remand supplemental brief, petitioner asserts that Young should have known of the justices' former employment with the Alameda County District Attorney because the information was publicly available. He also asserts that Justice Corrigan's

27

self-recusal from his state habeas proceedings reflected her implicit acknowledgement of "at least the potential for bias," which should have prompted Young to raise the issue of her participation in his direct appeal in his initial habeas petition. Furthermore, he alleges Young should have argued it was unreasonable for Justice Chin to participate in petitioner's case, since Justice Chin recused himself from another capital case[11] that was handled by the same prosecutor and litigated around the same time period.

Again, these conclusory allegations are insufficient. Petitioner presents no specific factual allegations that, if proved, would establish that Young had any basis to argue that the justices should have recused themselves from hearing petitioner's direct appeal, or that Justice Chin should have recused himself from participating in petitioner's initial habeas corpus proceeding. Although the court docket in petitioner's initial habeas proceeding notes that Justice Corrigan recused herself as of the date the petition was denied in July 2015, petitioner alleges no facts indicating that Young should have known of the recusal before then. Moreover, the mere fact that Justice Corrigan recused herself from hearing petitioner's initial habeas matter and Justice Chin recused himself in *In re Mark Schmeck*, without more, falls far short of showing a basis for deficient performance on Young's part.

### (g) Claims Five and Six

Claim Five of the exhaustion petition alleges that petitioner's statements to the police were obtained in violation of *Miranda* and its progeny (particularly *Edwards v. Arizona* (1981) 451 U.S. 477) and were improperly introduced against him at trial. Claim Six of the petition contends that Young was ineffective in failing to raise this issue on direct appeal.

---

[11] *In re Mark Schmeck* (Nov. 13, 2013, S131578).

The exhaustion petition contains no specific factual allegations regarding Young's omission of the *Miranda* claim from petitioner's direct appeal or her failure to pursue the claim in the initial habeas petition. Young does not mention the alleged *Miranda* contentions in her habeas declaration, and petitioner's certificate request and post-remand supplemental brief make only conclusory allegations that Young was ineffective in the matter.

Notably, however, the Supreme Court's appellate opinion recounted that petitioner "was informed of his *Miranda* rights, and agreed to talk to police investigators." (*People v. Friend*, *supra*, 47 Cal.4th at p. 16.) The Supreme Court also summarized the tape-recorded statements petitioner made to the police, which materially corresponded with petitioner's trial testimony. (*Id.* at pp. 16–18.) Petitioner completely fails to address these portions of the appellate opinion, which on their face indicate that Young acted reasonably in not raising the *Miranda* claims, either because there was no error or because the alleged error would not have warranted reversal in light of petitioner's trial testimony.

### 3. *Conclusion*

All in all, the allegations in petitioner's exhaustion petition, his certificate request, and his post-remand briefing are clearly inadequate to justify the issuance of a certificate of appealability based on petitioner's claim that prior counsel was ineffective. Petitioner offers no facts that, if proved, would support a finding that Young performed deficiently by failing to present the claims proffered in the exhaustion petition. (*Friend*, *supra*, 11 Cal.5th at p. 731, fn. 5.) In reaching this conclusion, we bear in mind the presumptions of correctness and competent assistance, including the recognition that "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that [counsel] did so for tactical reasons

29

rather than through sheer neglect." (*Yarborough*, *supra*, 540 U.S. at p. 8.) We are also mindful of the Supreme Court's admonishment, germane to the determination we make here, that it is only "[i]n *the rare instance* in which the petitioner is able to adequately justify not having raised the claim earlier [that] the successiveness bar does not apply." (*Friend*, *supra*, 11 Cal.5th at p. 728, relying on *Clark*, *supra*, 5 Cal.4th at p. 775 (italics added).)

Before turning to the second step in our habeas corpus analysis, we pause to address petitioner's assertion that the "substantial claim" language of section 1509.1(c) should be understood as meaning that a claim has some merit—i.e., a claim about which reasonable jurists could debate—in line with the federal standard for making a "substantial showing" necessary to obtain a certificate of appealability under federal law (28 U.S.C. § 2253(c)(2)). (*Slack v. McDaniel* (2000) 529 U.S. 473, 484.) According to petitioner, this standard "does not require full consideration of the factual or legal bases adduced in support of the claims."

Petitioner is unable to point to anything in the statutory text or in the ballot materials accompanying Proposition 66 indicating the voters' intent to import the foregoing federal standard. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) pp. 104–109.) That said, we need not venture an opinion on the matter because *Friend* and the decisions that preceded it require capital petitioners, at the outset, to plead with specificity the facts supporting their ineffective assistance of counsel claims. If that threshold is not met, there is nothing for reasonable jurists to debate.

In sum, petitioner has not made a substantial showing of ineffective assistance justifying his failure to previously present any of the six claims raised in his exhaustion petition.

## C. Second step:  Does petitioner present a substantial claim of actual innocence or ineligibility for the death penalty?

The second step of *Friend*'s analysis requires that we assess whether petitioner presents a substantial claim of actual innocence or ineligibility for the death penalty.  (*Friend*, *supra*, 11 Cal.5th at pp. 724, 729; § 1509(d).)  He plainly has not done so.

None of the six claims in petitioner's exhaustion petition involves allegations that, if true, would demonstrate petitioner is actually innocent.

Moreover, the sole claim that concerns petitioner's alleged ineligibility for the death penalty is Claim Three, in which he contends that a person— such as himself—who suffers from organic brain damage or organic brain impairment should be ineligible for the death penalty under the Eighth and Fourteenth Amendments.

As relevant here, section 1509(d) provides that claims of ineligibility include "a claim that the defendant has an intellectual disability, as defined in Section 1376."  In section 1376, subdivision (a)(1), intellectual disability is defined as "the condition of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before the end of the developmental period, as defined by clinical standards."  Consistent with these statutes, our Supreme Court has recognized that California does not presently bar capital punishment for "persons with intellectual impairments *short* of intellectual disability or insanity."  (*Boyce*, *supra*, 59 Cal.4th at p. 722.)  As previously discussed, to establish such a bar, there must be evidence that "evolving standards of decency" mark death as an excessive punishment for that group of offenders. (*Roper v. Simmons*, *supra*, 543 U.S. at pp. 560–561.)

Here, petitioner makes no showing and offers no allegation that he is insane or has an intellectual disability as contemplated in section 1376, although the record includes evidence of some brain impairment. Nor, as previously mentioned, does petitioner present evidence of a developing national consensus against capital punishment for offenders like himself, much less point to authority supporting such a position. (Cf. *Atkins*, *supra*, 536 U.S. at pp. 312 & 315–316.) We therefore conclude he has not shown a substantial claim of ineligibility for the death sentence. (See *Boyce*, *supra*, 59 Cal.4th at p. 722 [leaving it to the Legislature, should it so choose, " 'to determine exactly the type and level of mental impairment that must be shown to warrant a categorical exemption from the death penalty.' "].)

In sum, petitioner fails to show a substantial claim that he is either actually innocent or ineligible for the death sentence.[12]

## DISPOSITION

Petitioner fails to make a substantial showing that his claims are not successive within the meaning of section 1509, as the Supreme Court construed that term in *Friend*. Likewise, petitioner fails to show a substantial claim that he is either actually innocent or ineligible for the death sentence. Accordingly, petitioner's request for a certificate of appealability is denied.

---

[12] The exhaustion petition might also be read as contending petitioner is ineligible for the death penalty because he supposedly lacked the mental state necessary for his convictions due to his brain impairment. We do not construe section 1509(d)'s language to be directed at such a claim, which seems to challenge the sufficiency of the evidence.

32

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

A155955

*In re Friend* on Habeas Corpus A155955

Trial Court:  Alameda County

Trial Judge:  Hon. C. Don Clay

Attorneys:

   Jon M. Sands, Federal Public Defender, Lindsey Layer, Assistant Federal Public Defender, Stan Molever, Assistant Federal Public Defender for Defendant and Appellant.

   Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, James William Bilderback II, Senior Assistant Attorney General, Ronald S. Matthias, Senior Assistant Attorney General, Glenn R. Pruden, Supervising Deputy Attorney General, Alice B. Lustre, Supervising Deputy Attorney General, Gregg E. Zywicke, Deputy Attorney General for Plaintiffs and Appellants.