Filed 11/3/23  P. v. Jaimes CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANGELINA LACY JAIMES,<br><br>        Defendant and Appellant. | A164781<br><br>(Contra Costa County<br>Super. Ct. No. 500-201038-7) |

Angelina Lacy Jaimes, who was convicted of residential burglary (Penal Code,[1] section 459) and property crimes, contends that recent amendments to subdivision (c) of section 1385 (section 1385(c)), as added by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) required the trial court to dismiss two findings she identifies as "enhancements" subject to section 1385(c). Section 1385 has long given courts discretion to dismiss sentence enhancements. " 'Building on the California Rules of Court that guide judges in certain sentencing decisions, SB 81 aims to provide clear guidance on how and when judges may dismiss sentencing enhancements and other allegations that would lengthen a defendant's sentence. By clarifying the parameters a judge must follow, SB 81 codifies a recommendation developed with the input of the judges who serve on the Committee on the Revision of the

---

[1] All further statutory references are to the Penal Code.

1

Penal Code for the purpose of improving fairness in sentencing *while retaining a judge's authority to apply an enhancement to protect public safety.*' " (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 19, rev. denied (Mar. 22, 2023) quoting the September 8, 2021 Senate Floor Analysis, p. 5).) The statute provides that, with one exception, a court "shall dismiss an enhancement if it is in the furtherance of justice to do so" (§ 1385, subd. (c)(1)) and that, in exercising its discretion, "the court shall consider and afford great weight to evidence . . . that any of [nine enumerated] mitigating circumstances . . . are present" (*id.*, subd. (c)(2)). "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*)

In Jaimes's view, the statute compelled the court to strike at least one enhancement, and it abused its discretion by failing to give "great weight" to circumstances that should have led it to strike both. Specifically, she notes that a finding that she had previously been convicted of vehicle theft led the court to use a heightened sentencing triad dictated by section 666.5 for her vehicle-theft conviction in this case. She argues that the court erred by failing to consider the finding of this prior conviction an enhancement because the Legislature intended to include this alternative sentencing scheme within the definition of "enhancement" under section 1385(c).

The resolution of this issue is one of statutory construction. Under well-established law, "enhancement" has a legal or technical meaning of "an additional term of imprisonment added to the base term." (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 526–527 (*Romero*); Cal. Rules of Court, rule 4.405(5).) Section 666.5 is not an enhancement, but an alternative sentencing scheme, which provides higher base terms for defendants who have previously been convicted of vehicle thefts. (*People v. Lee* (2017)

2

16 Cal.App.5th 861, 869–870 (*Lee*); *People v. Demara* (1995) 41 Cal.App.4th 448, 452, 455 (*Demara*).) Based upon the rules of statutory construction, we hold that the Legislature did not intend section 666.5 to be considered an enhancement under section 1385(c). (*In re Friend* (2021) 11 Cal.5th 720, 730, as modified (Sept. 1, 2021) [when a court has defined a term and the legislature subsequently uses the same term, there is almost an "irresistible" presumption that the legislature intended to use this established definition]; *People v. Carter* (1996) 48 Cal.App.4th 1536, 1540 ["Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning."].)

Although Jaimes points out provisions of section 1385(c) she claims are surplusage and portions of the legislative history which are inconsistent with using the well-established definition of enhancement, we agree with our colleagues in the Third Appellate District that, to the extent the Legislature did not intend to use the term "enhancement" in accordance with its well-established definition, it is up to the Legislature, not the courts, to amend the statute. (*People v. Burke* (2023) 89 Cal.App.5th 237, 243–244, review den. (May 31, 2023) (*Burke*) [affirming sentence under the Three Strikes law].) We therefore affirm the judgment.

### Factual and Procedural Background

No relevant facts are in dispute. As the probation report detailed, Jaimes, who was 21 years old at the time of the crimes at issue, had a very difficult childhood: Her methamphetamine-addicted parents neglected her from a very young age, and she was in and out of the juvenile wardship system "throughout her childhood."

In 2013, at age 15, Jaimes was adjudicated to have committed felony violations of Vehicle Code sections 2800.3 (causing serious injury by flight

from peace officer) and 10851 (driving or taking vehicle without consent ("vehicle theft")) and was adjudged a ward of the court. She went AWOL from several group-home placements, and her juvenile wardship was terminated as unsuccessful in 2016.

Later that year she was convicted as an adult of vehicle theft (Veh. Code, § 10851, subd. (a)) and escape (Pen. Code, § 4532, subd. (b)(1)). In April 2021—after she committed the crimes at issue here, but before trial—she was convicted in Alameda County of residential burglary (*id.*, § 459).

The series of crimes at issue in this case began in August 2019 when Jaimes stole a car and later abandoned it. In December 2019, she stole a wallet from a parked car and tried to use an ATM card. In January 2020, she stole a wallet from another parked car and used a credit card and driver's license. Later that month, she stole presents wrapped for a children's birthday party from the trunk of a minivan and tried to sell some of them online. Finally, also in January 2020, she broke into a garage attached to a home, ransacked an SUV, and stole items from the SUV and garage.

The information charged Jaimes with vehicle theft (Veh. Code, § 10851); receiving a stolen vehicle (Pen. Code, § 496d); felony identity theft (*id.*, § 530.5, subd. (a)); misdemeanor identify theft (*id.*, § 530.5, subd. (c)(1)); petty theft (*id.*, § 484, subd. (a), § 490.2); and residential burglary (*id.,* § 459). To each of the two vehicle-related counts, the information appended an allegation, labeled an "Enhancement," that her prior vehicle theft conviction warranted a higher base term (*id.*, § 666.5); to the burglary count, it appended an enhancement allegation that she committed the offense while

4

released on bail or her own recognizance (OR) (*id.*, § 12022.1).[2] The information alleged no other "enhancements."

A jury found Jaimes guilty of the above six offenses and found that the burglary was of the first degree. She waived a jury trial on the remaining allegations, and the court found that she had suffered a vehicle-theft conviction in 2016 and was on bail or OR at the time of the burglary (§ 12022.1).

After reviewing a probation report, sentencing memoranda, and juvenile records, the court held a sentencing hearing. It began by expressing its tentative view that, although aggravating factors "greatly outweigh[ed]" mitigating factors in the case, Jaimes's undisputed history of "psychological, physical, or childhood trauma" brought her within the scope and intent of the newly added subdivision (b)(6)(A) of section 1170,[3] warranting imposition of a low term for the principal offense of first-degree burglary.

After hearing arguments and a statement by Jaimes, the court adhered to its tentative view and imposed a low term of two years for the crime of burglary (§ 459), with a two-year enhancement for having committed it while released on bail or OR (§ 12022.1). The court also imposed a one-year

---

[2] Strictly speaking, the information alleged two on-bail enhancements (§ 12022.1) as to the burglary count, based on Jaimes's having been released on bail or OR in two different cases at the time of the offense, but one was later dismissed. The information charged Jaimes with four other offenses, of which the jury found her not guilty. None of those charges is relevant on appeal.

[3] Section 1170, subdivision (b)(6) states that, "unless the court finds that aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (a) The person has experienced psychological, physical, or childhood trauma . . . ."

consecutive term on the vehicle-theft conviction (Veh. Code, § 10851).[4] That term is one-third the middle term of the higher triad dictated by the finding that Jaimes had previously been convicted of the same crime. (Pen. Code, § 666.5 [two-, three-, or four-year term for second or subsequent conviction of felony vehicle theft].) Finally, the court imposed a consecutive sentence of eight months (one-third the mid-term) on the felony identity theft count (*id.*, § 530.5, subd. (a)) and concurrent sentences of six months each on the two misdemeanor convictions. Thus, Jaimes's total sentence is five years, eight months: two years for burglary, with a two-year on-bail enhancement; one year for vehicle theft (given the triad dictated by section 666.5); and eight months for felony identity theft.

Jaimes filed a timely appeal. She challenges only the propriety of imposing the two-year on-bail enhancement and of using the heightened sentencing triad (§ 666.5) for the vehicle-theft count, which had the effect of increasing her term on that count by four months.[5]

## DISCUSSION

As noted, Senate Bill No. 81 amended section 1385, which authorizes courts to strike enhancements, by adding subdivision (c), which we quoted in part in the introduction and set forth more fully in the margin.[6]

---

[4] The court stayed, pursuant to section 654, a term of eight months (one-third the middle term) for receiving a stolen vehicle (§ 496d, subd. (a)).

[5] But for section 666.5, the applicable triad would have been 16 months, 2 years, or 3 years (Veh. Code, § 10851, subd. (a); Pen. Code, § 1170, subd. (h)), such that one-third the middle term would have been 8 months.

[6] "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

Of the nine mitigating circumstances listed in section 1385(c), Jaimes relies on three: her crimes were "connected to . . . childhood trauma" (§ 1385, subd. (c)(2)(E)); she faced multiple enhancements (*id.*, subd. (c)(2)(B)); and her offenses were not violent (*id.*, subd. (c)(2)(F)). Jaimes contends that because three mitigating factors apply in this case, the court abused its discretion by failing to strike the on-bail enhancement (§ 12022.1) (which is undisputedly an "enhancement" in the strict sense of the term) and by failing to strike the finding that led the court to select a term for the vehicle-theft count chosen from the higher sentencing triad for recidivists set forth in section 666.5.

---

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

* * *

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

* * *

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case." (§ 1385, subd. (c).)

7

The applicability of two of the three circumstances is undisputed: the trial court made implicit findings, which the Attorney General does not dispute, that Jaimes's felonies were not violent and were "connected to prior victimization or childhood trauma."[7] Although Jaimes's sentencing memorandum raised the multiple-enhancements circumstance as a basis for striking one of the "enhancement" findings (i.e., the on-bail finding (§ 12022.1) or the finding of a prior vehicle-theft conviction (§ 666.5), the court did not address that claim. The Attorney General does not concede the applicability of the "multiple enhancements" factor, as he disagrees that alternative sentencing schemes like section 666.5 qualify as "enhancements" for purposes of section 1385(c). We agree with the Attorney General that this case involves only one enhancement because an alternative sentencing triad, such as the one dictated by section 666.5 in this case, is not an enhancement.

We look first to the words of the statute to determine its meaning. Section 1385(c) refers only to enhancements: "[T]he court shall dismiss an enhancement . . . ." As noted, that term has a well-established definition in California law: "an additional term of imprisonment added to the base term." (Cal. Rules of Court, rule 4.405(5); *Romero*, *supra*, 13 Cal.4th at pp. 526–527.) Jaimes concedes that section 666.5, at issue here, is not an "enhancement" in

---

[7] In its discussion of "the analysis for striking enhancement [*sic*]," the court made no express finding as to any factor listed in section 1385(c). However, in analyzing what term to impose on the burglary count, the court found that Jaimes had suffered "psychological, physical, or childhood trauma" that contributed to commission of the crime, and in concluding that she should not receive probation and should receive consecutive sentences, the court found that her crimes were not violent. The parties seem to agree, as do we, that we should treat the court as having made implicit findings, for purposes of section 1385(c), that her crimes were "connected to prior victimization or childhood trauma" (§ 1385, subd. (c)(6)(E)) and were not violent (*id.*, subd. (c)(6)(F)).

that strict sense, but an alternate sentencing scheme for recidivist vehicle thieves. (*Lee*, *supra*, 16 Cal.App.5th at pp. 869–870; *Demara*, *supra*, 41 Cal.App.4th at pp. 452, 455.) She claims, however, that the Legislature intended the term "enhancement," as used in section 1385(c), to include findings triggering such alternative sentencing schemes.

We review de novo this question of statutory interpretation. (*Burke*, *supra*, 89 Cal.App.5th at p. 242, citing *People v. Tirado* (2022) 12 Cal.5th 688, 694.) We must ascertain the intent of the Legislature to effectuate the purpose of the law; if there is " ' "no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' " (*Burke*, at p. 242, quoting *People v. Coronado* (1995) 12 Cal.4th 145, 151; *River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 942 (*River Garden*).)

Noting the established definition of "enhancement," the Attorney General argues that Senate Bill No. 81 cannot apply to a section 666.5 finding.[8] The Third Appellate District in *Burke*, *supra*, 89 Cal.App.5th 237, the only published decision thus far to analyze the issue, reached the same conclusion. *Burke* involved the Three Strikes law—probably the best known alternative sentencing scheme. Invoking the canon of statutory construction that " '[o]rdinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning' " (*Burke*, at p. 243), the court held that Senate Bill 81 does not apply to alternative

---

[8] We agree with the parties' implicit assumption that a court has discretion in the first instance, pursuant to section 1385, to strike a section 666.5 finding, whether or not section 1385(c) now applies to guide the *exercise* of such discretion. Jaimes's only argument as to why the court erred in failing to strike the finding is that section 1385(c) compelled it to do so, or else limited its discretion in a way that it failed to recognize. She does not claim that the court abused its discretion even if section 1385(c) did not apply.

9

sentencing schemes because they do not fall within the established legal meaning of "enhancement." (*Id*. at pp. 243–244.) It reasoned as follows: "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme . . . . [Citation.] The Legislature did not otherwise define the word 'enhancement' in section 1385. Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider [its] legislative history . . . ." (*Id*. at p. 243.)

Our Supreme Court has explained: "When, however, a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage. 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*In re Friend*, *supra*, 11 Cal.5th at p. 730; see § 7, subd. (16) ["Words and phrases . . . as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning"].) Both the courts and the Rules of Court have used this specific definition of enhancement for decades. There is no other established definition of enhancement in the law. This presumption is particularly apt in interpreting section 1385 because of the "contentious relationship" between the Legislature and the other branches of government in interpreting section 1385, where the courts look for "clear legislative direction" in interpreting the statute. (*Romero*, *supra*, 13 Cal.4th at pp. 518–519, 521; *People v. Fuentes* (2016) 1 Cal.5th 218, 226 [both cases determining whether Legislature had

10

taken away court's discretion].) We, like the court in *Burke*, presume that the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme when it used the term "enhancement" in section 1385(c).

Jaimes, however, contends that the Legislature intended the term "enhancement" to encompass alternative sentencing schemes. To negate the presumption that the Legislature intended to use the term in accord with its established meaning, Jaimes argues that two provisions of the statute are rendered surplusage if we apply the established definition of enhancement. "[W]e generally must 'accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*).) The canon, though, does not require that we find surplusage whenever a statute contains extraneous words. "While ' "[a] construction making some words surplusage is to be avoided [citation]," ' there is no 'rule of statutory construction requiring courts "to assume that the Legislature has used the most economical means of expression in drafting a statute . . . " ' " (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 369, review den. (Apr. 13, 2022); *River Garden*, *supra*, 186 Cal.App.4th at p. 942; Civ. Code, § 3537 ["Superfluity does not vitiate"].) The canon is a guide to statutory construction and not "invariably controlling." (*People v. Raybon* (2021) 11 Cal.5th 1056, 1070 & fn. 10, 1071.)

Jaimes identifies two parts of section 1385(c) that she contends require us to ignore the established definition of enhancement. First is the provision in subdivision (c)(1) that a court "shall dismiss an enhancement if it is in the furtherance of justice to do so, *except if dismissal of that enhancement is*

11

*prohibited by any initiative statute.*" (§ 1385, subd. (c)(1), italics added.) Second is the provision that a court must give great weight in deciding whether to strike an "enhancement" to a finding that a defendant "was a juvenile when they committed . . . prior offenses, including criminal convictions and juvenile adjudications, that trigger *the enhancement*." (§ 1385, subd. (c)(2)(G), italics added.) Jaimes represents that she is unaware of any traditional enhancements the dismissal of which is "prohibited by any initiative statute" and unaware of "any juvenile adjudication that can . . . increase a defendant's sentence other than a Three Strikes prior." In supplemental briefing, the Attorney General is also unable to identify any current circumstances in which either of these subdivisions would apply.

When the statute is clear, "there is no need for us to rely on the canon against surplusage (or any other canon of statutory construction)." (*Kemp v. Superior Court* (2022) 86 Cal.App.5th 981, 995.) In light of the well-established definition of enhancement, the almost irresistible presumption that the Legislature intended to use this definition, and the contentious history between the courts and the Legislature when section 1385 has been amended, we conclude that the Legislature did not intend to include alternate sentences in section 1385(c)'s definition of enhancement. If the Legislature had intended a different definition for enhancement, it certainly knew how to define enhancement to include alternative sentencing schemes. " '[I]t is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149–1150.) Simply put, if our Legislature was trying to change the definition of enhancement, it picked an opaque way to do so. It

12

could have easily defined enhancements to include alternative sentencing schemes or used the terms enhancements and alternative sentencing schemes in the statute. Since the definition of enhancement is so well established, we will not abandon it even if it means that some language is surplusage. Jaimes also points to portions of the legislative history and of a report by the California Law Revision Commission, upon whose recommendation section 1385(c) is based, which she claims supports her interpretation. Since we find the statutory language is clear and unambiguous based upon the well-established definition of enhancement, we do not look beyond the language of the statutes. (*Burke*, *supra*, 89 Cal.App.5th at p. 243.)

The trial court did not commit error by failing to consider striking an enhancement because there were not multiple enhancements as required by section 1385(c). Instead, the court properly considered the aggravating and mitigating factors of section 1170 in imposing the sentence on Jaimes.

We also find that the trial court properly exercised its discretion in declining to dismiss the on-bail enhancement. The record demonstrates that Jaimes raised the issue of striking the enhancements pursuant to section 1385(c) in her sentencing memo and at the hearing. While the court never specifically stated that the dismissal of the enhancement would endanger public safety, the record reflects the court reviewed the section 1385(c) factors and balanced Jaimes's childhood trauma with the other factors. We presume that the court knew and applied the correct statutory and case law, and Jaimes has failed to demonstrate otherwise. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) Jaimes's record of a continuous pattern of increasing criminal offenses from a young age which culminated in her first-

degree residential burglary conviction supports a finding that dismissing the enhancement would endanger public safety.

## DISPOSITION

The judgment is affirmed.

FINEMAN, J.[*]

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

*People v. Jaimes* (A164781)

---

[*] Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.